IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | | |
|---|---|---|
| SETH GOTTESMAN, | * | |
| individually and as parent and next friend | | |
| of his minor child T.G., | | |
| 10141 Peanut Mill Drive | | |
| Gaithersburg, MD 20882, | | |
| Plaintiff | * | |
| | | C-15-CV-25-002440 |
| v. | | |
| MONTGOMERY COUNTY BOARD OF | * | _____ |
| EDUCATION | | |
| 15 W. Gude Drive, Suite 100 | | |
| Rockville, MD 20850, | | |
| MONTGOMERY COUNTY | * | |
| PUBLIC SCHOOLS | | |
| 15 W. Gude Drive, Suite 400 | | |
| Rockville, MD 20850, | | |
| THOMAS W. TAYLOR, | * | |
| Superintendent of MCPS | | |
| 15 W. Gude Drive, Suite 400 | | |
| Rockville, MD 20850 | | |
| BRADLEY ROHNER | * | |
| Principal, Damascus High School | | |
| 25921 Ridge Road | | |
| Damascus, MD 20872 | | |
| YOLANDA ALLEN | * | |
| Director, Office of School Support and Improvement | | |
| 15 W. Gude Drive, Suite 400 | | |
| Rockville, MD 20850 | | |
| | * | |
| Defendants. | | |

\* \* \* \* \* \* \* \* \* \* \* \*

- 1 -

## VERIFIED COMPLAINT

For his complaint, SETH GOTTESMAN, on his own behalf and as parent and next friend of his minor child, T.G., and by and through undersigned counsel of record, Paul R. Rivera, Esq., states as follows:

### INTRODUCTION

1. This case presents the question of whether a student who has earned his high school diploma can be denied it, as well as the right to celebrate graduation with his peers, by Montgomery County Public Schools (MCPS) after it has violated the United States Constitution, the Maryland Declaration of Rights, the Maryland Administrative Procedure Act (M.A.P.A.), the Maryland Education Code, the Code of Maryland Regulations (COMAR), and several of MCPS's own local policy regulations.

### PARTIES

2. Plaintiff, Seth Gottesman, is a resident of Montgomery County, Maryland. He is the father of T.G. who is a minor, unemancipated child. T.G. has attended Damascus High School (DHS) in the MCPS system since the 2021-22 school year, where he has completed his high school academic requirements – but for the controversy raised in this case. T.G. is a Senior intending to graduate on May 30, 2025.

3. Plaintiff is the adult parent of a minor as described in § 1-103 of the General Provisions of the Code of Maryland and, pursuant to § 5-203 of the Family Article of the Code of Maryland, he is "jointly and severally responsible for T.G.'s support, care, nurture, welfare, and education." Plaintiff is not a mental health or childcare practitioner. Plaintiff is a past and current taxpayer to Maryland and Montgomery

County, Maryland.

4.  Defendant MCBE is a public entity that, pursuant to § 4-101 of the Education Article of the Code of Maryland, controls educational matters that affect Montgomery County. Pursuant to § 4-108(3) of the Education Article, MCBE is authorized to adopt educational policies for MCPS, but only if those rules and regulations are consistent with state law.  Pursuant to § 4-108(4) of the Education Article, MCBE is authorized to adopt rules and regulations for the conduct and management of MCPS, but only if those rules and regulations are consistent with state law.  MCBE's principal place of business is located at 15 W. Gude Drive, Suite 100, Rockville, MD 20850.

5.  MCPS is a "local school system" and "educational institution" as each is defined in chapter 13A.08.02.03 of the Code of Maryland Regulations.  MCPS and MCBE are each a "local educational agency" as defined in 20 U.S.C § 1232h(c)(6) that receive federal funds from federal education programs. MCPS's offices and principal place of business are located at 15 W. Gude Drive, Suite 400, Rockville, MD 20850.

6.  In this Complaint, Plaintiff contends that actions and/or omissions by MCPS are attributable to MCBE, and vice-versa.

7.  Defendant Taylor is the Montgomery County Superintendent of Schools.  He is sued in both his official and individual capacities.  Pursuant to § 4-102 of the Education Article of the Code of Maryland, Defendant Taylor is the executive officer, secretary, and treasurer of MCBE.  At all times relevant to this complaint, Defendant Taylor (and/or his predecessors) was responsible for implementing and enforcing policies, rules, and regulations adopted by MCBE.

8.  Defendant Rohner is the current Principal of an MCPS local high school, **Damascus High School, where Plaintiff's minor child attends.** At all times relevant to this complaint, Defendant Rohner and/or his predecessors) was responsible for implementing and enforcing policies, rules, and regulations adopted by MCBE. He is sued in both his official and individual capacities.

9.  Defendant Allen was at all times relevant to this Complaint, one of MCPS' Directors of Office of School Support and Improvement. At all times relevant to this complaint, Defendant Allen (and/or her predecessors) was responsible for implementing and enforcing policies, rules, and regulations adopted by MCBE. She is sued in both her official and individual capacities.

## JURISDICTION AND VENUE

10. This is an action for monetary, injunctive, and declaratory relief.  This Court has jurisdiction pursuant to §§ 1-501, 3-402, 3-403, and 3-409 of the Courts and Judicial Proceedings Article of the Code of Maryland.  Plaintiffs seek relief, *inter alia*, under the Maryland Uniform Declaratory Judgments Act.

11. Venue in this Court is proper pursuant to § 6-201 of the Courts and Judicial Proceedings Article, as the Defendants reside and carry on regular business in Montgomery County.

## SOCIETAL DISAGREEMENT & CONTROVERSY

12. Presently, our society is in a clash of worldviews over matters of sexuality, biological sex, and "gender identity"; public schools across this nation are arenas where this conflict has played out. On the one hand are parents who seek to preserve the innocence of their children and prepare them personally and individually for important future rites of passage as the children reach adulthood. These parents are motivated not only by cultural traditions by which they were raised, but also by religious mores that have endured for centuries and confirmed by their holy texts. On the other hand are many parents, teachers, and school officials who strongly believe that society's advancement can only be achieved by exposing children to ideas and mores that may be antithetical to those of their parents.

13. This clash of worldviews has not gone unnoticed by the Supreme Court. It observed in *Obergefell v. Hodges*, 576 U.S. 644, 679-80 (2015), that people of good faith in all sincerity differ about the morality and propriety of homosexual conduct, including same-sex marriage:

> [I]t must be emphasized that religions, and those who adhere to religious doctrines, may continue to advocate with utmost, sincere conviction that, by divine precepts, same-sex marriage should not be condoned. The First Amendment ensures that religious organizations and persons are given proper protection as they seek to teach the principles that are so fulfilling and so central to their lives and faiths, and to their own deep aspirations to continue the family structure they have long revered.

14. The Supreme Court in *Edwards v, Aguillard*, 482 U.S. 578, 584 (1987), stated, "Families entrust public schools with the education of their children, but condition

their trust on the understanding that the classroom will not purposely be used to advance religious views that may conflict with the private beliefs of the student and his or her family.  Students in such institutions are impressionable and their attendance is involuntary."

## MCPS HIGH SCHOOL HEALTH CREDIT REQUIREMENT

15. This case involves sincerely-held religious objections of a parent to mandatory governmental teaching of minors in matters related to LGBT (lesbian, gay, bisexual, transgender) sexual orientation and identity ("SO") and/or gender identity or expression ("GI") (collectively referred to hereafter as "LGBT-SOGI") through the use of required instructional materials, classroom discussions, and other activities.

16. To graduate from an MCPS high school, students are required to complete a one-credit Health education course[1] ("Health course") composed of six (6) units: a) Mental and emotional health; b) Substance abuse prevention; c) Family life and human sexuality ("FLHS"); d) Safety and violence prevention; e) Healthy eating; and f) Disease prevention and control. COMAR 13A.04.18.01(C).

17. In the Health course, MCPS teaches minors that non-traditional sexuality, non-traditional family units, and transgenderism are as natural and beneficial as heterosexuality, traditional family structures, and acceptance of one's biological sex. At the same time, Maryland law recognizes that many parents disagree with this worldview and find such teaching objectionable for their children for religious, health, and other reasons.  To accommodate these fundamental interests of parental rights and

---

[1] MCPS Regulation ISB-RA III.B.1.a)(1)(a).

free exercise of religion, Maryland law provides that such instructional materials are to be <u>confined and restricted to only one</u> section of the Health curriculum, "Family Life and Human Sexuality" ("FLHS") [2]; and moreover that parents are to be given <u>advance notice of the materials to be used</u> and <u>a right to opt out their</u> child from that instruction. COMAR 13A.04.18.01(2)(e); MCPS Regulation IGP-RA III.E.4(a)-(c).

## <u>PLAINTIFF LEARNED OF OBJECTIONABLE CONTENT; WAS DENIED REVIEW OF INSTRUCTIONAL MATERIALS; FILED AN ADMINISTRATIVE COMPLAINT FOR RELIGIOUS EXEMPTION; MCPS TOOK NO ACTION FOR EIGHTEEN (18) MONTHS</u>

18.  In early 2022, Plaintiff became aware of revelations of internal MCPS documents which were distributed in the community, including a viewgraph used by MCPS with its teachers that indicated that MCPS was not restricting LGBT-SOGI instruction to the FLHS unit, but directing its teachers to spread those topics throughout the course, subverting the opt-out rights of parents like Plaintiff.

19.  This revelation began what has been a contentious administrative non-disclosure and complaint process that remains unresolved to this day.

20.  During that complaint process, MCPS denied and obstructed Plaintiff from obtaining and reviewing the Health course materials interjecting instruction on LGBT-SOGI objectives throughout the curriculum.

---

[2] MCPS Regulation IGP-RA III.E.2 (second).

21. MCPS is required by applicable law to restrict instruction related to family life and human sexuality ("FLHS") including LGBT-SOGI, <u>solely to the FLHS part of the Health course</u>, in part to preserve the regulatory mandate that parents may opt out their children from instruction related to FLHS topics.

22. MCPS has violated state statutory law, regulatory law, and its own regulations by interspersing instruction concerning LGBT-SOGI throughout the entire Health course curriculum.

23. Plaintiff has sincerely-held religious beliefs based in the Bible, and which irreconcilably conflict with LGBT-SOGI. Accordingly, Plaintiff objects to his child being enrolled in the MCPS Health course.

24. Plaintiff sought to opt out his child from instruction in the FLHS unit, including instruction concerning LGBT-SOGI.

25. Beginning on 3/31/2022, when his child was in the 9th grade, Plaintiff requested multiple times to review the Health curriculum that MCPS was to teach to high school students. Rather than openly and transparently provide the curriculum to Plaintiff for review, MCPS directed him to make a formal request under the Maryland Public Information Act (MPIA).

26. On 4/11/2022, Plaintiff made a request under MPIA to review the Health curriculum, and thereafter continued to meet with and correspond with MCPS, including contacting a sitting member of MCBE to seek assistance in reviewing the Health curriculum.

27. On 4/26/2022, MCPS replied to Plaintiff's MPIA request, but without providing the full curriculum as requested, and claiming that the request was too broad, and that fulfillment of his request would require estimated fees to be incurred between "$250 to $5,000", and that such fees would not be waived. This demand was unreasonable, excessive, and beyond the means of Plaintiff.

28. MCPS's demand for advance payment of up to $5,000 was in violation of COMAR 13A.04.18.01(2)(e), MCPS Regulation IGP-RA III.E.4(a)-(c), and also in violation of federal law, the Protection of Pupil Rights Amendment, 42 U.S.C. § 1232h(c)(1)(C), all of which mandate that MCPS provide parents with access to instructional materials to be used with their children in the Health course.

29. On 2/4/2023, when his child was in the 10th grade, Plaintiff submitted an administrative complaint ("Complaint From the Public" or "CFP") to DHS in which he sought a religious exemption for T.G. from the Health course requirement.

30. According to MCPS Regulation KLA-RA[3], a CFP is to be addressed first at the local school (Level I), and if requested, second by the MCPS Chief Operating Officer or a designee (Level II). If the complainant is not satisfied, he may appeal the Level II decision to the full Montgomery County Board of Education (MCBE). An unsatisfactory result may be appealed to the Maryland State Board of Education (MSBE)[4]. Finally, an unsatisfactory result from the MSBE may be addressed in the

---

[3] MCPS Regulation KLA-RA (Concerns, Complaints, and Appeals to the Superintendent of School) in effect on 2/4/2023.
[4] COMAR 13A.01.05.02

Circuit Court by a Petition for Judicial Review[5]. Each of these steps is sequential, and to ensure timeliness Level I and Level II each have defined time parameters of between 10-20 work or calendar days.

31. Upon information and belief, Plaintiff was not ever given notice of MCPS' Level I decision on his CFP.  DHS and/or MCPS apparently failed to afford Plaintiff a Level I review of his CFP within 10 working days, and proceeded directly to a Level II review.

32. By not providing Plaintiff a Level I Review of his CFP, DHA and/or MCPS violated both its own policy (**MCPS Regulation KLA-RA**) and the Maryland Administrative Procedure Act ("M.A.P.A.") (Ann. Code Md., State Government §§10-201 et seq.).

33. Eventually Plaintiff was contacted by the "Director of School Support and Well-Being" (Eugenia S. Dawson, Ed.D "Dawson") for all MCPS.

34.  On 3/21/2023, Plaintiff had a remote conference ("Meeting") with Dawson to discuss the CFP and the religious exemption seeking to opt-out his minor child from MCPS' Health course. This was apparently a Level II Review performed by the MCPS designee.

35. MCPS failed to notify Plaintiff of its Level II Review decision in his CFP within the 15 days of the Meeting, as its regulation KLA-RA requires.

36. On 4/10/2023, Plaintiff affirmatively contacted Dawson to follow-up on their Meeting of 3/21/2023 and non-decision. Plaintiff communicated his interpretation and

---

[5] COMAR 13A.01.05.11

understanding that in light of MCPS' failure to decide his CFP, that his religious exemption had been effectively approved.

37. Neither Dawson, nor anyone else within MCPS, ever at any time responded to Plaintiff's correspondence of 4/10/2023.

38. For the ensuing period of nearly seventeen (17) months, Plaintiff operated in reasonable reliance upon MCPS' non-denial of his CFP, and to T.G.'s detriment, that the religious exemption to the Health course had been conceded by MCPS.

39. Not until 9/10/2024, nearly eighteen (18) months after the Meeting, did MCPS notify Plaintiff of its Level II Review of his CFP, denying the relief sought of the religious exemption from the Health course.

40. Between 9/10/2024 and 10/22/2024 Plaintiff corresponded back and forth with MCPS personnel DHS as well with other systemwide-MCPS personnel concerning the now suddenly-denied religious exemption.

41. On 10/16/2024, Plaintiff corresponded with Defendant (Principal) Rohner of DHS summarizing the CFP process which MCPS violated, the harm done to his child by this violation, and his position that MCPS could not at this late stage deny the religious exemption.

42. On 10/22/2024, MCPS' Director of Office of School Support and Improvement, Dr. Yolanda Allen ("Allen"), corresponded with Plaintiff re-stating the Health course requirement for Plaintiff's child, suggesting alternatives to the Health course which were objectionable to Plaintiff (and at least one of which was too late to implement),

and advising him of his (then expired) right to appeal the denial of the religious exemption.

43. On 12/13/2024, Plaintiff sent a letter of appeal to the MCBE summarizing the CFP process which MCPS violated, the harm done to his child by this violation, and his position that MCPS could not at this late stage deny the religious exemption.

44. As of this writing, Plaintiff has still received no acknowledgement or response whatever to his MCBE appeal submitted on 12/13/2024.

45. On 2/18/2025, correspondence from Defendant Rohner was addressed to Plaintiff indicating that the Health Education credit had not been earned and that it was required for graduation.

46. On 2/28/2025, Plaintiff corresponded with his child's local high school principal summarizing the CFP process which MCPS violated, the MCBE's failure to respond to his appeal, and under the circumstances his expectation that T.G. would be graduating on time with his peers.

47. On 3/3/2025, correspondence from Rohner was addressed to Plaintiff indicating that, notwithstanding foregoing violations by MCPS and MCBE of the CFP process, the Health Education credit had not been earned and that it was required for graduation.

48. On 4/24/2025, Plaintiff's request that T.G. be allowed to participate in graduation exercises was denied by DHS, including but not limited to Rohner.

49. As of this writing, the religious exemption from the Health course requirement denied to T.G. will result in him being denied a high school diploma and the participation in graduation exercises scheduled for Friday, May 30, 2025.

50. MCPS violated its own regulation (KLA-RA) and the M.A.P.A. by delaying approximately eighteen (18) months to communicate its Level II Review decision in which it denied the religious exemption sought by Plaintiff.

51. MCPS violated the Free Exercise of Religion clause of the First Amendment of the U.S. Constitution by denying Plaintiff the prerogative of opting out T.G. from the MCPS Health course.

52. By denying Plaintiff the prerogative of opting out his minor child from the MCPS Health course, MCPS violated the U.S. Constitution by denying Plaintiff his fundamental parental right to direct the upbringing of his child

53. MCPS violated Article 36 of the Declaration of Rights of the Constitution of Maryland Article by denying Plaintiff the prerogative of opting out his minor child from the MCPS Health course.

54. By denying Plaintiff the prerogative of opting out his minor child from the MCPS Health course, MCPS violated both the Declaration of Rights of the Constitution of Maryland, the Annotated Code of Maryland, and the COMAR.

55. At this juncture and in these circumstances, the only fair and equitable remedy is for injunctive relief to allowing T.G. to be awarded his high school diploma and permitting him to participate in the graduation exercises on Friday, May 30, 2025.

### MCBE VIOLATES THE COMAR BY SPREADING LGBT-SOGI INSTRUCTION THROUGHOUT THE HEALTH COURSE, INSTEAD OF LIMITING IT TO THE FLHS PORTION OF THE COURSE, ILLEGALLY PRECLUDING PLAINTIFF FROM EXERCISING HIS RIGHT TO OPT OUT HIS CHILD

56. It is not merely speculative or a frivolous charge that MCPS has illegally spread LGBT-SOGI throughout the Health course. In fact, undersigned counsel and MCPS

have litigated this identical issue in an administrative law forum  involving other

parties. That administrative matter was decided by the MSBE in May 2024, was

reviewed by this Court, and is now on appeal to the Appellate Court of Maryland.

57.  What is striking about that administrative litigation is the clear admission MCPS made

in its briefing that <u>spreading LGBTQ+ topics throughout the Health course was in</u>

<u>facts its goal</u>:

> "It is asserted [by MCPS] that the request to confine LGBTQ+
> instruction solely to the FLHS portion of the curriculum
> constitutes a demand for curriculum alteration, *<u>as LGBTQ+</u>*
> *<u>topics are integrated throughout the entirety of the health course,</u>*
> *<u>not confined solely to one segment.</u>* This assertion is *<u>consistent</u>*
> *<u>with MCPS's local policy and educational objectives</u>*." [6]

58.  Not only did MCPS make its position clear, but the MSBE's ruling manifested this

clarity, including in its ruling that MCPS had in fact spread LGBT materials

throughout the Health course:

> Maryland's comprehensive health education regulations require
> education surrounding mental and emotional health, substance
> abuse prevention, and safety and violence prevention. The incorporation of
> LGBTQ+ resources would assist in that curriculum's primary
> objective to help students adopt and maintain behaviors that protect
> and promote health and avoid or reduce health risk. COMAR
> 13A.04.18.01B. *<u>We agree with the local board [MCBE/MCPS] that</u>*
> *<u>incorporation of LGBTQ+ resources throughout the entire health</u>*
> *<u>classroom</u>* fulfills MCPS' fundamental responsibility to include
> instructional materials that reflect the diversity of the local and global
> community. Incorporation of LGBTQ+ resources acknowledge the
> diverse identities and experiences present within the student body and
> it aims to foster an inclusive environment." [7]

---

[6] MCBE Reply Brief, page 2, submitted to MSBE (3/25/2024), *T.J. and D.J. v.*
*Montgomery County Board of Education.* (emphasis added)
[7] MSBE Opinion No. 24-10, *T.J. and D.J. v. Montgomery County Board of*
*Education.* (4/20/2024). (emphasis added)

59. Whereas MCPS explicitly conceded that instruction about LGBT-SOGI is an objective of the <u>FLHS</u> portion of the Health curriculum, it is not seriously arguable that MCPS has intentionally spread such teaching <u>throughout</u> the Health course.  This renders the FLHS opt-out for LGBT-SOGI instruction meaningless and superfluous, but also violates the Health Framework for curriculum generated by the State Board of Education—a framework that keeps LGBT-SOGI instruction confined within the FLHS part of the curriculum.

60. Judge Quattlebaum of the Fourth Circuit addressed this issue in the recent decision in *Mahmoud v. McKnight*, 102 F.4th 191 (4th Cir. 2024), *cert. granted sub nom. Mahmoud v. Taylor*, No. 24-297 (Sup. Ct., Jan. 17, 2025).    While the issue was not presented by the parents-appellants and, thus, his comments are *dicta*, Judge Quattlebaum still hit the nail on the head:

> The board's policy has another problem. Maryland state regulations requires instruction on family life and human sexuality.  Md. Code Regs. 13A.04.18.01.  And such "family life and human sexuality instruction shall represent all students regardless of ability, sexual orientation, gender identity, and gender expression."   Md. Code Regs. 13A.04.18.01(D)(2)(a).  But Maryland also requires schools to establish procedures for notice and opt-out procedures for all "family life and human sexuality" instruction regardless of whether they are sought for a religious reason.  Md. Code Regs. 13A.04.18.01(D)(2)(e).  Even though not taught in a sex-ed class, the books the board required be used with K-5 children to promote diversity and inclusivity to the LGBTQ+ community involve issues of family life and human sexuality.  I see nothing in the Maryland regulations that would permit the board to avoid the requirement to permit opt-outs for family life and human sexuality just by adding instruction in that area to other classes.

*Id.* at 226 n.4 (Quattlebaum, J., dissenting).

61.  The same holds true with respect to transgenderism.  Some parents, like the Plaintiff here, seek to teach their children that sex and gender are synonymous and immutable, that humans are created by God as either male or female, must strive to accept and respect themselves, accept their place in the larger reality of human biology and a society predicated on male and female differences.  LGBT-SOGI asserts that human beings are autonomous, self-defining entities who can impose their internal beliefs about themselves on the exterior world.  Plaintiff contends that many secondary school children will have neither the experience, nor knowledge, nor wisdom to grasp the contradictions between these worldviews and their different implications.

62.  Through regulation and policy, the Maryland State Board of Education ("State Board"), and Defendants MCBE and MCPS have adopted a process to permit these conflicting interests to be navigated consistently with federal and state law imperatives.  This process allows parents to opt out their children from instruction related to family life and human sexuality and from instruction that impinges on religious beliefs and the free exercise of religion.

**REGULATIONS AND POLICIES GOVERNING FAMILY LIFE AND HUMAN SEXUALITY INSTRUCTION AND RELIGIOUS FREEDOM**

63.   COMAR 13A.04.18.01, promulgated by the State Board, requires that each Maryland public school provide an instructional program in comprehensive health education each year for prekindergarten through twelfth grade.  In the same regulation, the State Board sets standards for this education and states that students must comprehend specific areas, including Family Life and Human Sexuality.  The State Board also

specifies in the regulation that each local school district must establish guidelines and procedures allowing students to opt out of the FLHS portions of the instruction and allowing parents to review the related curricular materials.  The opt-out is not limited to religious reasons, but may be exercised for any reason of the parents or students, in their sole discretion.

64. The current version of COMAR 13A.04.18.01 was adopted in 2019, and one of its purposes was to require the FLHS health curriculum to include "inclusive language" to make it "representative of all students," but that instruction was directed to be part of the FLHS curriculum.  It provides in part as follows:

> .01 Comprehensive Health Education Instructional Programs for Grades Prekindergarten-12.
>
> A. Each local school system shall:
>
> (1) Provide in public schools an instructional program in comprehensive health education each year with sufficient frequency and duration to meet the requirements of the State framework for all students in grades prekindergarten-8;
>
> (2) Offer in public schools a comprehensive health education program in grades 9-12 which enables students to meet graduation requirements and to select health education electives . . . .
> . . . .
>
> D. Special Requirements
> . . . .
>
> (2) Family Life and Human Sexuality.
>
> (a) Maryland family life and human sexuality instruction shall represent all students regardless of ability, sexual orientation, gender identity, and gender expression.
> . . . .

(d) Direct teaching of the family life and human sexuality indicators and objectives will begin in or prior to the fifth grade.

(e) The local school system shall establish policies, guidelines and/or procedures for student opt-out regarding instruction related to family life and human sexuality objectives.

(i) For students opting out of family life and human sexuality instruction, each school shall establish a procedure for providing a student with appropriate alternative learning activities and/or assessments in health education.

. . . .

(iii) The local school system shall provide an opportunity for parents/guardians to view instructional materials to be used in the teaching of family life and human sexuality objectives.

. . . .

(g) When teaching concepts and skills related to family life and human sexuality, in addition to general teacher preparation, teachers are required to have additional preparation in content and teaching methods of such depth and duration as to be appropriate for the material taught.  The additional preparation may be provided by college courses, local in-service programs, and/or State workshops.

. . . .

65. The State Board has promulgated a "Comprehensive Health Education Framework" ("Health Framework"), of which FLHS is a part.  Per the Health Framework, FLHS for prekindergarten through twelfth grade includes instruction in "Gender Identity and Expression" and "Sexual Orientation and Identity." *See* https://marylandpublicschools.org/about/ Documents/DCAA/Health/Health_Education_Framework_July_2022.pdf.  As a heading for all pages of the Health Framework providing the "Standard" for FLHS, the State Board provides, "The local school system shall establish policies, guidelines,

and/or procedures for student opt-out regarding instruction related to family life and human sexuality objectives," citing the COMAR.

66. The Health Framework further provides objectives for various grades that expressly identify concepts and objectives relating to non-traditional, alternative family structures as FLHS instruction subject to opt-out.  For example,

a. Under the topic "Healthy relationships and consent," FLHS instruction for "Prekindergarten" includes, "Recognize that there are different types of families (e.g., single-parent, same-gender, intergenerational, blended, interracial, adoptive, foster, etc.)"; for "Kindergarten," the objective is to "identify" such family structures, now including "cohabiting" as one; for "Grade 1," the objective is to "describe" differences in such families; and, for "Grade 2," such instruction is to "[e]xplain why it is important to respect different kinds of families" as identified.

b. Under the topic "Gender identity and expression," FLHS instruction for "Kindergarten" includes, "Recognize a range of ways people identify and express their gender"; for "Grade 1," it includes, "Identify a range of ways people identify and express gender"; for "Grade 6," it includes, "Define sex assigned at birth, gender identity, and gender expression"; for "Grade 7," it includes, "Compare sex assigned at birth and gender identity and explain how they may or may not differ"; and for "Grade 8," it includes instruction to "explain" the same.

c. Under the topic "Sexual orientation and identity," FLHS instruction for "Grade 4" includes, "Identify sexual orientation as a person's physical and/or romantic attraction to an individual of the same and/or different gender."

67. Consistent with COMAR 13.04.18.01, the Health Framework does not include similar objectives relating to non-traditional, alternative family structures and LGBT-SOGI in any other part of the health education curriculum.

68. MCBE has promulgated Regulation IGP-RA for its "Comprehensive Health Education Instructional Program," which includes in part instruction on FLHS.  With respect to FLHS instruction, the regulation provides in § III.E.2 that it "shall represent all students regardless of ability, sexual orientation, gender identity, and gender expression."   It provides in § III.E.4 that parents will be given notice of the curricular materials related to FLHS and may opt out their children:

> Where FLHS is taught, students may be excused from the unit of study upon written request from their parent/guardian. For students excused, the school shall provide alternative learning activities in health education.

69. Regulation IGP-RA also recognizes that, if FLHS instruction is taught under another specified curriculum, parents would not be provided appropriate notice and opportunity to opt out of such instruction.  To prevent such a circumstance, Regulation IGP-RA provides in § III.E.2[second], "FLHS materials are not to be used in any other instructional program of the school."

70. The COMAR, the Health Framework, and Regulation IGP-RA all make clear that (a) FLHS objectives are to be taught only as part of the health education curriculum subject to notice and opt-out by parents and (b) the FLHS objectives should not be taught as part of any other MCPS educational curriculum.  The Defendants cannot lawfully circumvent or evade the notice and opt-out provisions for FLHS instruction by teaching FLHS objectives as part of another curriculum or program.

71. MCBE promulgated Regulation SR&R, "A Student's Guide to Rights and

Responsibilities in Montgomery County Public Schools."  In the 2022-23 version,

under "Freedom of Religion," the regulation states in part as follows:

> The Board is committed to promoting respect and appreciation for
> the religions, beliefs, and customs of the diverse MCPS student
> population. MCPS publishes the *Guidelines for Respecting
> Religious Diversity* as a reference regarding MCPS rules, which
> guide the district on these topics.

https://www.google.com/search?client=firefox-b-

d&q=- 21 -montgomery+county+board+of+ education+regulation+SR%26R.

72. MCPS's *Guidelines for Respecting Religious Diversity,* promulgated in part pursuant

to MCBE Regulation SR&R, provide in part in the introduction as follows:

> [S]tudents have the right to their religious or nonreligious beliefs
> and practices, free from discrimination, bullying, or harassment,
> and MCPS is committed to making feasible and reasonable
> accommodations for those beliefs and practices. . . .  MCPS [and
> others consulted in the community] . . . seek to promote respect
> and appreciation for the religions, beliefs, and customs of our
> diverse student population.  They foster a culture where all
> families feel respected and deepen our commitment to our core
> values of Learning, Relationships, Respect, Excellence, and
> Equity.  MCPS believes that diversity is one of our greatest
> strengths and should enrich our community as we learn together in
> our schools.

https://www2.montgomeryschoolsmd.org/siteassets/district/students/rights/0854.22_R

eligiousDiversityGuidelines_8.5x11_WEB.pdf.

These guidelines recognize that Montgomery County is a culturally and religiously

diverse community and that religious diversity is a strength of the community that

should be respected by MCPS.

73. Plaintiff first sought to review Health course instructional materials in March 2022, and then Plaintiff filed his CFP in March 2023. During that time period MCPS's *Guidelines for Respecting Religious Diversity* provided robust protection for students whose religious beliefs might be "substantially burdened" by objectionable classroom discussions or activities as follows:

> ***Requests to be Excused from Instructional Programs for Religious Reasons:*** When possible, schools should try to make reasonable and feasible adjustments to the instructional program to accommodate requests from students, or requests from parents/guardians on behalf of their students, to be excused from specific classroom discussions or activities that they believe would impose a substantial burden on their religious beliefs.  Students, or their parents/guardians on behalf of their students, also have the right to ask to be excused from the classroom activity if the students, or their parents/guardians, believe the activity would invade student privacy by calling attention to the student's religion.  When a student is excused from the classroom activity, the student will be provided with an alternative to the school activity or assignment.
>
> Applying these principles, it may be feasible to accommodate objections from students or their parents/guardians to a particular reading assignment on religious grounds by providing an alternative selection that meets the same lesson objectives. However, if such requests become too frequent or too burdensome, the school may refuse to accommodate the requests. Schools are not required to alter fundamentally the educational program or create a separate educational program or a separate course to accommodate a student's religious practice or belief. For example, schools are not required to excuse students from all music instruction based on a religious concern, because music is an integral part of Maryland's arts curriculum; however, schools may seek to avoid, if possible, requiring a student with a religious objection to play an instrument or sing.

74. All the regulations, rules, frameworks, procedures, and guidelines mentioned in this subsection of the complaint deal with fundamental, constitutional rights and are

designed to provide rights to parents of minor children attending MCPS schools and to the children themselves. None have the sole purpose of the orderly transaction of agency business.

75. However, starting in the 2023-24 school year, MCPS abruptly changed and gutted its policy concerning religious diversity. Plaintiff contends that this change was a transparent attempt to manufacture a litigation advantage over the plaintiffs in any number of lawsuits it is facing over violations of parental rights and constitutional rights. The change was as follows:

> ***Requests to be Excused from Instructional Programs for Religious Reasons.*** Students may be excused from noncurricular activities, such as classroom parties or free-time events that involve materials or practices in conflict with a family's religious, and/or other, practices. However, <u>MCPS cannot accommodate requests for exemptions from required curricular instruction or the use of curricular instructional materials</u> based on religious, and/or other, objections. **<u>2023–2024 Guidelines for Respecting Religious Diversity in Montgomery County Public Schools, pp. 4-5.</u>** (emphasis added) https://www.montgomeryschoolsmd.org/contentassets/2bcd99470c9f44 f891cc5be276c25d19/religiousdiversityguidelines_final.pdf

### FLHS OPT-OUT: REGULATORY PROVISIONS AND CURRICULUM FRAMEWORK

76. As a heading for all pages of the Health Framework providing the "Standard" for FLHS, the State Board provides, "The local school system shall establish policies, guidelines, and/or procedures for student opt-out regarding instruction related to family life and human sexuality objectives," citing the COMAR.

77. Consistent with COMAR 13A.04.18.01, the Health Framework <u>does not include similar objectives</u> relating to non-traditional, alternative family structures and lifestyles <u>in any other part</u> of the Health education curriculum.

78. Per COMAR 13A.04.18.01.E, MCPS "shall provide comprehensive health education curriculum documents . . . that . . . [a]re aligned with the State [Health] Framework."

79. The State Board recognized in its Health Framework that some parents, particularly religious ones like Plaintiff, would object to the type of LGBT-SOGI instruction identified for FLHS objectives.  The Board's Health Framework says (at 6), "The opt-out provision reflects the State Board's and MSDE's respect for individual parents' values and beliefs concerning family life and human sexuality instruction."  *See* https://marylandpublicschools.org/about/Documents/DCAA/Health/Health_Education_Framework_July_2022.pdf (emphasis added).

80. MCBE Regulation IGP-RA regarding the Health curriculum, tracking the COMAR, provides in § III.E.2 that "FLHS instruction shall represent all students regardless of ability, sexual orientation, gender identity, and gender expression" and in § III.E.4 that parents will be given notice of the curricular materials related to FLHS and may opt out their children.  https://ww2.montgomeryschoolsmd.org/departments/policy/pdf/igpra.pdf (emphasis added).

81. In § III.E.2[second], Regulation IGP-RA provides that "FLHS materials are not to be used in any other instructional program of the school" (emphasis added).

82. That instruction related to LGBT-SOGI is "instruction related to [FLHS] objectives" is self-evident. Those objectives are provided by the Health Framework, quoted in part above.  Manifestly and conspicuously, teaching about LGBT-SOGI provides "instruction related to [FLHS] objectives."  Indeed, COMAR 13A.04.18.01.D(2),

tracked by MCBE Regulation IGP-RA, prescribes that it is <u>FLHS</u> instruction that is to discuss "sexual orientation, gender identity, and gender expression."

83. Judge Quattlebaum has it completely right. 102 F. 4th at 226 n.4. MCBE cannot avoid the FLHS regulations that allow opt-out from instruction related to FLHS objectives simply by relabeling LGBT-SOGI+ instruction as non-FLHS instruction.

84. Under both U.S. and Maryland law, the substance of a matter controls, not simply the label assigned to it. "[W]hat cannot be done directly cannot be done indirectly. The [law] deals with substance, not shadows." *Cummings v. Mo.*, 71 U.S. (4 Wall.) 277, 325 (1867), quoted in *Students for Fair Admission, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181, 230 (2023); *Denezpi v. United States*, 596 U.S. 591, 614 (2022) (Gorsuch, J., dissenting).

85. The Maryland Court of Appeals applied this principle in *Anderson v. Department of Health & Mental Hygiene*, 528 A.2d 904 (Md. 1987), when it held that a criminal penalty cannot be converted to a civil one simply by labeling it as such. And it made another application in *Hanna v. Board of Education of Wicomico County*, 200 Md. 49, 55, 87 A.2d 846 (1952) when the school board circumvented the law requiring competitive bids by making substantial changes to the specifications shortly after award. The court summarized, "In short, the municipality or agency cannot do indirectly what it is prohibited from doing directly." That is exactly what MCPS is attempting here by inserting FLHS instruction throughout the curriculum and calling it something else.

86. But a law is "levelled at the thing, not the name." *Students for Fair Admission*, 600

U.S. at 230; *Drehman v. Stifle*, 75 U.S. 595, 598 (1869) (both citing *Cummings*). The same result follows from a plain reading of the regulation.  COMAR 13A.04.18.01.D(2)(e)(i) does not limit the parental opt-out to whatever the school district happens to teach in what it calls the FLHS unit.  Instead, it requires parents to be able to opt out from all *instruction* regarding FLHS *objectives*:  "The local school system shall establish policies, guidelines and/or procedures for student opt-out regarding instruction related to family life and human sexuality objectives."  The regulation places no limit based on what the school district might call the particular unit when it provides an opt-out for "instruction related to [FLHS] objectives."

<u>**FACTS SPECIFIC TO SETH GOTTESMAN'S**</u>
<u>**SINCERELY HELD VIEWS CONCERNING LGBT-SOGI INFORMED BY HIS**</u>
<u>**RELIGION**</u>

87. Plaintiff, Seth Gottesman, takes seriously his rights and responsibilities to provide for the care, nurture, education, and training of T.G.  In carrying out his responsibilities, he desires to make important life decisions for T.G.

88. Mr. Gottesman sincerely believes in the divine inspiration of the Holy Bible, and his understanding of its teachings forms the basis of his religious faith.  Mr. Gottesman understands his religion to impress upon him, as a father, the primary duty to care for, nurture, educate, and train T.G., including to provide religious instruction to T.G. and to determine when to shield his child from instruction that violates his religious teachings, ethics, and principles.  His responsibilities as parent include at their core discussing sexual matters with T.G. and determining when he should receive such instruction, taking into account his unique personality and circumstances.

89. Mr. Gottesman sincerely believes - on sincerely-held religious grounds - that same-sex actions, including same-sex marriage, are not natural or normative, that they violate the biblical and religious doctrines to which he adheres.  Plaintiff's religious beliefs distinguish between homosexual inclinations or tendencies, which he does not regard as violative of his religious beliefs and actions taken to carry out those inclinations or tendencies, which he does regard as contrary to the teachings of his religion.

90. Mr. Gottesman sincerely believes - on religious grounds - that transgender actions, including taking names and pronouns and wearing apparel inconsistent with the person's biological sex, are not natural or normative, that they violate the religious doctrines to which he adheres.  Plaintiff's religious beliefs distinguish between transgender inclinations or tendencies, which he does not regard as violative of his religious beliefs, and actions taken to carry out those inclinations or tendencies, which he does regard as contrary to the teachings of his religion.  That these religious grounds are supported by other grounds does not render them non-religious.

91. Mr. Gottesman believes as a religious principle that humans attain their fullest God-given potential by acting consistently with their biological sex.

92. Instruction that gender transitioning is natural and appropriate conflicts with Mr. Gottesman's sincerely held religious and moral beliefs that human beings are created male or female and that the natural created order regarding human sexuality cannot be changed, regardless of individual feelings, beliefs, or discomfort with one's identity as either male or female.  He bases this in part on Genesis 1:27:  "So God created mankind in his own image, in the image of God he created them; male and female he

created them."  Mr. Gottesman contends that his beliefs in this regard are consistent with biological reality and that exhibiting as transgender is a sinful act.

93. In accordance with his understanding of the Bible's teaching that cooperating with the sin of others is itself a sin, Mr. Gottesman believes he has a religious duty to stand up to evil and to reject all sinful behavior.  Therefore, by not providing an opt-out, the Defendants are forcing Mr. Gottesman to forego a free public education or commit sin as defined by his faith, threatening his eternal rewards.

94. When T.G. reached school age, Mr. Gottesman enrolled T.G. in MCPS.

He did so because of the generally high level of education provided by MCPS; because it was the least expensive alternative afforded to him; and to provide T.G. the other benefits of attending a diverse, community school.  He still desires to accrue these benefits for his child by continuing to enroll T.G. in MCPS.

### MCPS DENIES REVIEW OF COURSE MATERIALS AND AN OPT-OUT FOR T.G. FOR THE HEALTH COURSE, DESPITE MCPS INCORPORATING FLHS INSTRUCTIONAL MATERIAL THROUGHOUT THE COURSE

95. The State Board requires students in the public schools to take a one-credit-hour "health" course as part of the requirements for graduation and sets out the objectives of the "health" course in the Framework.  MCPS satisfies this requirement by offering in high school the health education curriculum in courses it entitles "Health A" and "Health B" (collectively, "Health Course").

96. As part of his parental responsibilities, Mr. Gottesman kept informed of the curriculum being used and to be used with T.G. at Damascus High School, especially with respect to "health" and "sexual" topics.  Before the 2022-23 school year began, Mr.

Gottesman became aware of an increased emphasis by MCPS to instruct students that LGBT-SOGI are normative, healthy, and beneficial, and to include such instruction throughout the Health Course, despite its previously being limited to the FLHS portion of the course from which they could opt out T.G.  As a result, Mr. Gottesman became concerned that MCPS would not restrict such teaching to the FLHS portion of the Health Course, as provided by the Framework and the applicable regulations, but would give such instruction throughout the Health Course materials.  For MCPS to do so would impose a constitutionally significant threat to Plaintiff's free exercise of his religion and his right and responsibility to care for, nurture, and educate his child.

97. Plaintiff became aware of training materials for MCPS teachers of the Health Course for the 2022-23 school year by obtaining a few pages from a non-official source.  On one such page, the materials stated as one of the day's objectives the following: "Review LGBTQ+ resources to incorporate more inclusive language in the Health Education classroom throughout the ENTIRE course" (emphasis in original).  The title of the document was "Tier 1 Training, High School Health Education, PDO Course #90924, July 11, 12, 19 and 21" ("Training Materials").

98. In order to determine whether the curriculum of the Health Course would include LGBT-SOGI and other material suitable only for FLHS in other parts of the Health Course, Plaintiff in March-April 2022 made a written request directly to DHS for Health Curriculum materials, and subsequently for the same materials pursuant to the MPIA.

99. Plaintiff was also entitled to the disclosure of instructional materials for the Health course under the Protection of Pupil Rights Amendment, 42 U.S.C. § 1232h(c)(1)(C), which mandates that schools must provide parents with access to all instructional materials to be used with their children.

100. MCPS failed to provide any instructional materials to Plaintiff unless he first committed himself financially to pay for the materials in an unspecified amount between $250 and $5,000.

101. All of these failures of MCPS to disclose instructional materials time after time and year after year, in violation of federal law, state law, state regulations, and MCPS's own policy have illegally kept Plaintiff in the dark about the Health curriculum. It is now too late for MCPS to cure these violations.

**HARMS CAUSED TO MR. GOTTESMAN, T.G., AND THE PUBLIC**

102. MCPS violated Mr. Gottesman's regulatory and constitutionally protected parental and free exercise rights by refusing to allow him to view the teaching materials and by refusing to provide them an opt-out from FLHS instruction wrongly reclassified as, and distributed in, other instruction.

103. MCPS has continued to violate the regulatory and constitutionally protected parental and free exercise rights of Mr. Gottesman during each of the 2022-23, 2023-24, and 2024-25 school years by its continued refusal to allow them to view the teaching materials and to provide an opt-out from family life and human sexuality instruction wrongly being taught throughout the Health course, and distributed in, other instruction.

104. Upon information and belief, MCPS has misclassified and redistributed FLHS instruction, and in particular instruction concerning LGBT-SOGI, in order to avoid allowing parents to exercise their right to have their children opt out from texts and related instruction in accordance with COMAR 13A.04.18.01, MCBE Regulation IGP-RA, and MCPS's (prior) *Guidelines for Respecting Religious Diversity,* The Maryland Declaration of Rights, and the U.S. Constitution.

105. The actions about which Mr. Gottesman complain have violated his regulatory and constitutionally protected parental and free exercise rights and his responsibility to care for, nurture, and educate T.G.  Moreover, the Defendants have acted discriminatorily and with animus against the free exercise of religion in their application of the No-Opt-Out Policy.

106. The actions about which Mr. Gottesman complain have conditioned his receipt of the generally applicable public benefit of a public-school education on his submitting to a constitutionally significant threat to his parental and religious free exercise rights and responsibilities.

107. The actions about which Mr. Gottesman complain have damaged the stated goal of MCBE and MCPS to respect religious and other cultural differences among Montgomery County residents, to the detriment of the public interest, and in particular to T.G.

## BY SPREADING INSTRUCTION ABOUT FLHS OBJECTIVES THROUGHOUT THE ENTIRE HEALTH CURRICULUM, MCPS HAS MADE THE FLHS OPT-OUT APPLICABLE TO THE ENTIRE CURRICULUM

108. MCPS spreads LGBT-SOGI instruction throughout the Health course, instead of limiting it to the FLHS unit. As noted above and as Judge Quattlebaum observed, the language of the COMAR opt-out does not limit itself to whatever a school might deign to put in the FLHS unit. It applies to *all* instruction the relates to FLHS *objectives*. COMAR 13A.04.18.01.D(2)(e)(iii). Thus, the COMAR opt-out right travels with all such instruction. Since, as MCPS admits, the LGBT-SOGI instruction has been interspersed throughout the entire course, Plaintiff may opt T.G. out of the entire course.

109. A total opt-out of the Health class requirement is not unusual. The class is only a one-hour class, and it is not part of the graduation requirements for private schools. When Maryland gives tens of thousands of diplomas to private school graduates each year without their taking the Health class prescribed for public school students, one more exception will not matter.

### BY VIOLATING ITS LEGAL OBLIGATION TO PROVIDE REVIEW OF THE HEALTH CURRICULUM MATERIALS, MCPS HAS WAIVED ITS RIGHT TO OBJECT TO THE PLAINTIFF OPTING OUT HIS CHILD FROM THE ENTIRE HEALTH CLASS, OR ALTERNATIVELY MCPS SHOULD BE EQUITABLY ESTOPPED FROM DENYING THE OPT OUT

110. This same result is required because MCPS violated its duty to provide the course materials to Plaintiff and denied his right to obtain them through a Maryland records request. This behavior estops MCPS from arguing now, that the entire Health course is not infused with instruction related to FLHS objectives. The only effective remedy for MCPS's violations of its disclosure obligations is to allow Plaintiff to opt out his child from the entire Health course.

111. This Court should find that MCPS violated applicable laws, regulations, policies, and rules by violating COMAR, MAPA, and MCPS's own policies, and chould order MCPS to allow the Plaintiff to opt out his child from the course.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF REGULATIONS PROVIDING FOR
### OPT-OUT FOR FAMILY LIFE AND HUMAN SEXUALITY INSTRUCTION

112.     The Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

113.     The Defendants have violated COMAR 13A.04.18.01 by, *inter alia,* (a) refusing to provide advance notice and review of materials properly classified as FLHS instructional materials; and (b) refusing to allow Mr. Gottesman to opt out his minor child from LGBGTQ+ instruction distributed throughout the Health Course curriculum, instead of being restricted only to the FLHS part of the curriculum as required by the State Health Framework.

114.     The Defendants have violated MCBE Regulation IGP-RA by, *inter alia,* (a) refusing to provide advance notice and review of materials properly classified as FLHS instructional materials; and (b) by denying his religious exemption request and refusing to allow Mr. Gottesman to opt out his minor child from LGBT-SOGI instruction distributed throughout the Health Course curriculum instead of restricted to the FLHS part of the curriculum.

115.     In all the above respects, and with respect to his contention that opt-outs cannot be made for "mandatory" instruction, the Defendants have acted arbitrarily, capriciously, unreasonably, and contrary to the law.

WHEREFORE, the Plaintiff requests that this Court grant the relief requested in the Requests for Relief.

## COUNT II
## VIOLATION OF GUIDELINES PROVIDING FOR OPT-OUT FOR RELIGIOUS REASONS

116.     The Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

117.     Instruction representing LGBT-SOGI as normative, healthy and beneficial is contrary to the religious beliefs of Mr. Gottesman and imposes a substantial burden on the exercise of his religion, which provides that his children not be educated in violation of his religious beliefs.

118.     By refusing to allow the Plaintiff to opt out his child from LGBT-SOGI instruction and materials, the Defendants have violated MCPS's *Guidelines for Respecting Religious Diversity* which were in force on 3/4/2023 when Plaintiff submitted his Complaint from the Public seeking a religious exemption.

119.     By refusing to allow the Plaintiff to opt out his child from LGBT-SOGI instruction and, under MCPS's *Guidelines for Respecting Religious Diversity*, the Defendants have acted arbitrarily, capriciously, unreasonably, and contrary to the law. Moreover, the opt-out provision violates due process in that it gives the Defendants

unbridled discretion to deny an opt-out, which the Defendants have used arbitrarily and capriciously.

WHEREFORE, the Plaintiff requests that this Court grant the relief requested in the Requests for Relief.

## COUNT III
## VIOLATION OF REGULATION KLA-RA PROVIDING FOR ADMINISTRATIVE RESOLUTION OF COMPLAINT FROM THE PUBLIC

120.    The Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

121.    Defendants failed to conduct a Level I Review of Plaintiff's CFP.

122.    Defendants failed to provide a Level II Review of Plaintiff's CFP for approximately eighteen (18) months.

123.    Defendants denied Plaintiff's religious exemption request and disallowed Plaintiff from opting out his minor child from LGBT-SOGI instruction dispersed throughout the Health Course curriculum, instead of restricted to the FLHS part of the curriculum.

WHEREFORE, the Plaintiff requests that this Court grant the relief requested in the Requests for Relief.

## COUNT IV
## 42 U.S.C. §1983
## VIOLATION OF PARENTAL RIGHTS—U.S. CONSTITUTION

124.     The Plaintiff incorporates by reference all preceding paragraphs of this

Complaint.

125.     Section 1983 of title 42 of the United States Code provides, in relevant part,

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . subjects, or
> causes to be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for redress . . . .

126.     The Defendants each acted under color of law of the State of Maryland

in adopting and implementing their practice of concealing and withholding

instructional materials form parents, and by thwarting parental opt-out rights.

127.     The fundamental rights of parents to direct the care, custody, education, and

control of their minor children are protected under the Fourteenth Amendment, which

provides, in relevant part, "No state shall . . . deprive any person of life, liberty, or

property, without due process of law; nor deny to any person within its jurisdiction the

equal protection of the laws."  These fundamental parental rights include, but are not

limited to, the right of parents to counsel their children on important decisions related

to their health and safety, to determine what is in the best interests of their minor

children, to determine when their minor children should be counseled on matters

related to sexual identity and family life, and to determine whether their children

should attend public school.

128.     Matters regarding homosexuality and transgenderism relate directly to the

minor child's sexual identity and are at the core of family life and, thus, they are also

at the core of the parents' rights and responsibilities with respect to their minor children.

129.     Defendants failed to conduct a Level I Review of Plaintiff's CFP, failed to provide a Level II Review of Plaintiff's CFP for approximately eighteen (18) months, denied Plaintiff's religious exemption request and disallowed Plaintiff from opting out his minor child from LGBT-SOGI instruction dispersed throughout the Health Course curriculum, instead of restricted to the FLHS part of the curriculum.

130.     The foregoing actions and/or omissions have directly, substantially, and significantly infringed on the parental rights and responsibilities of the Plaintiff with respect to his child.

131.     The Defendants do not have a compelling reason for the foregoing actions and/or omissions.

132.     The Defendants, to the extent they have a compelling reason for the foregoing actions and/or omissions, have not done so in the least restrictive way possible.

WHEREFORE, the Plaintiff requests that this Court grant the relief requested in the Requests for Relief.


## COUNT V
## VIOLATION OF PARENTAL RIGHTS—MARYLAND CONSTITUTION AND STATUTE

133.     The Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

134.     Article 2 of the Declaration of Rights of the Maryland Constitution provides, in relevant part, "The Constitution of the United States . . . [is] and shall be the Supreme Law of the State . . ."

135.     Article 5(a)(1) of the Declaration of Rights of the Maryland Constitution provides, in relevant part, "That the Inhabitants of Maryland are entitled to the Common Law of England ... . ."

136.     Article 19 of the Declaration of Rights of the Maryland Constitution provides, in relevant part, "That every man, for any injury done to him in his person or property, ought to have remedy by the course of the law of the Land   . . ."

137.     Article 24 of the Declaration of Rights of the Maryland Constitution provides, in relevant part, "That no man ought to be taken or . . . disseized of his freehold, liberties or privileges, . . . or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

138.     Section § 5-203 of the Family Article of the Code of Maryland provides in relevant part that parents "are jointly and severally responsible for the[ir] child[ren]'s support, care, nurture, welfare, and education."

139.     Maryland, through the provisions quoted above and otherwise in its Constitution and laws, protects parents' fundamental rights to direct the care, custody, education, welfare, safety, and control of their minor children.  These fundamental rights include, but are not limited to, the rights of parents to counsel their children on important decisions regarding their health and safety and to decide what is in the best interests of their minor children.  These fundamental rights of parents are based both in

the Common Law of England and in the United States Constitution's Privileges or

Immunities, Due Process, and Equal Protection Clauses.

140.     Parental rights under the Maryland Declaration of Rights are broader than and

encompass all those protected under the Fourteenth Amendment of the U.S.

Constitution.

141.     Defendants failed to conduct a Level I Review of Plaintiff's CFP, failed to

provide a Level II Review of Plaintiff's CFP for approximately eighteen (18) months,

and denied Plaintiff's religious exemption request and disallowed Plaintiff from opting

out his minor child from LGBT-SOGI instruction dispersed throughout the Health

Course curriculum, instead of restricted to the FLHS part of the curriculum.

142.     The foregoing actions and/or omissions have directly, substantially, and

significantly infringed on the parental rights and responsibilities of the Plaintiff with

respect to his child.

143.     The Defendants do not have a compelling reason for the foregoing actions

and/or omissions.

144.     The Defendants, to the extent they have a compelling reason for the foregoing

actions and/or omissions, have not done so in the least restrictive way possible.

         WHEREFORE, the Plaintiff requests that this Court grant the relief requested

in the Requests for Relief.

## COUNT VI
## 42 U.S.C. §1983
## REFUSAL TO ALLOW REVIEW OF CURRICULAR MATERIALS IN
## VIOLATION OF U.S. CONSTITUTION AND FEDERAL LAW

145.    The Plaintiff incorporates by reference all preceding paragraphs of this

Complaint.

146.    Parental rights include the right of parents to determine whether their minor

child should attend public school.  To allow parents to be informed in making that

determination, the public schools must provide to parents for review, upon reasonable

request, curricular materials planned to be used with their minor children.  This right

of review is guaranteed by the U.S. Constitution.

147.    The right of parents to review public school curriculum is also provided for by

the Protection of Pupil Rights Amendment ("PPRA"), 20 U.S.C. § 1232h(c)(1), which

provides in relevant part as follows:

> a local educational agency that receives funds under any
> applicable program shall develop and adopt policies, in
> consultation with parents, regarding the following:
> . . .(C)
>
> (i) The right of a parent of a student to inspect, upon the
> request of the parent, any instructional material used as part
> of the educational curriculum for the student; and
>
> (ii) any applicable procedures for granting a request by a
> parent for reasonable access to instructional material within a
> reasonable period of time after the request is received.

148.    The State Board and MCBE have provided for access to instructional material

by PPRA that involves FLHS objectives in COMAR 13A.04.18.01 and MCBE

Regulation IGP-RA.

149.    MCPS violated the Plaintiff's rights to review instructional materials by

refusing his reasonable requests to do so, and by conditioning such access on

exorbitant and unreasonable fees, when MCPS was required by law to provide such

access to the Plaintiff at no fee, thereby violating Plaintiff's fundamental right and

responsibility to direct the education and upbringing of his minor child.

WHEREFORE, the Plaintiff requests that this Court grant the relief requested

in the Requests for Relief.

### COUNT VII
### 42 U.S.C. §1983
### VIOLATION OF THE FREE EXERCISE OF RELIGION—U.S. CONSTITUTION

150.     The Plaintiff incorporates by reference all preceding paragraphs of this

Complaint.

151.     The First Amendment of the United States Constitution provides, in relevant

part, "Congress shall make no law . . . prohibiting the free exercise" of religion.  This

provision has been made applicable to State action through incorporation into the

Fourteenth Amendment.

152.     Defendants, failed to conduct a Level I Review of Plaintiff's CFP, failed to

provide a Level II Review of Plaintiff's CFP for approximately eighteen (18) months,

and denied Plaintiff's religious exemption request and disallowed Plaintiff from opting

out his minor child from LGBT-SOGI instruction dispersed throughout the Health

Course curriculum, instead of restricted to the FLHS part of the curriculum.

153.    The foregoing actions and/or omissions have directly, substantially, and significantly infringed on the Plaintiff's free exercise of religion as protected by the United States Constitution.

154.    The Defendants do not have a compelling reason for the foregoing actions and/or omissions.

155.    The Defendants, to the extent they have a compelling reason for the foregoing actions and/or omissions, have not done so in the least restrictive way possible.

WHEREFORE, the Plaintiffs request that this Court grant the relief requested in the Requests for Relief.

**COUNT VIII**
**VIOLATION OF THE FREE EXERCISE OF RELIGION—MARYLAND**
**CONSTITUTION**

156.    The Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

157.    Article 36 of the Declaration of Rights of the Constitution of Maryland provides in part as follows:

> That as it is the duty of every man to worship God in such manner as he thinks most acceptable to Him, all persons are equally entitled to protection in their religious liberty; wherefore, no person ought by any law to be molested in his person or estate, on account of his religious persuasion, or profession, or for his religious practice, unless, under the color of religion, he shall disturb the good order, peace or safety of the State, or shall infringe the laws of morality, or injure others in their natural, civil or religious rights . . . .

158.    The Maryland Constitution protects the free exercise of religion at least to the same extent as the U.S. Constitution.

159.    Defendants, failed to conduct a Level I Review of Plaintiff's CFP, failed to provide a Level II Review of Plaintiff's CFP for approximately eighteen (18) months, and denied Plaintiff's religious exemption request and disallowed Plaintiff from opting out his minor child from LGBT-SOGI instruction dispersed throughout the Health Course curriculum, instead of restricted to the FLHS part of the curriculum.

160.    The foregoing actions and/or omissions have directly, substantially, and significantly infringed the Plaintiff's free exercise of religion as protected by the Maryland Declaration of Rights.

161.    The Defendants do not have a compelling reason for the foregoing actions and/or omissions.

162.    The Defendants, to the extent they have a compelling reason for the foregoing actions and/or omissions, have not done so in the least restrictive way possible.

WHEREFORE, the Plaintiff requests that this Court grant the relief requested in the Requests for Relief.

### COUNT IX
### 42 U.S.C. §1983
### DISCRIMINATION AGAINST FREE EXERCISE OF RELIGION—U.S. CONSTITUTION

163.    The Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

164.    The Free Exercise Clause of the U.S. Constitution requires government actors to allow the free exercise of religion by permitting exceptions to its laws, regulations, policies, and practices.  It further requires state actors not to discriminate against the

free exercise of religion when applying laws, regulations, policies, and practices and allowing exceptions to those laws, regulations, policies, and practices.

165.     On information and belief, the Defendants have violated the Free Exercise Clause of the U.S. Constitution and the Plaintiffs' free exercise of religion by discriminating against the free exercise of religion in application of its opt-out policies to LGBT-SOGI materials, by, *inter alia*, allowing opt-outs from instruction in certain instances but not for religious reasons, allowing opt-outs for religious reasons for some instruction but not LGBT-SOGI instruction, and allowing opt-outs for certain ages but not for others.

166.     The Defendants cannot justify their discrimination against religion by any compelling interest, and, assuming *arguendo* an applicable compelling interest, they have failed to implement their infringement against the free exercise of religion in the least restrictive manner available, as the policy is both overinclusive and underinclusive.

167.     Although the Supreme Court's ruling in *Employment Division v. Smith* does not apply in these circumstances, should the Court determine that it does, *Smith* was wrongly decided, as discussed in the concurring opinions of *Fulton v. Philadelphia*, and should no longer be followed by the lower courts and should be overruled by the U.S. Supreme Court.

WHEREFORE, the Plaintiff requests that this Court grant the relief requested in the Requests for Relief.

### COUNT X

## DISCRIMINATION AGAINST THE FREE EXERCISE OF RELIGION—
## MARYLAND CONSTITUTION

168.    The Plaintiff incorporates by reference all preceding paragraphs of this

Complaint.

169.    Article 36 of the Declaration of Rights of the Constitution of Maryland

requires government actors to allow the free exercise of religion by permitting

exceptions to its laws, regulations, policies, and practices.  Article 36 further requires

state actors not to discriminate against the free exercise of religion when applying

laws, regulations, policies, and practices and allowing exceptions to those laws,

regulations, policies, and practices.

170.    On information and belief, the Defendants have violated Article 36 and the

Plaintiffs' free exercise of religion by discriminating against the free exercise of

religion in application of its opt-out policies to LGBT-SOGI materials, by, *inter alia*,

allowing opt-outs from instruction in certain instances but not for religious reasons,

allowing opt-outs for religious reasons for some instruction but not LGBT-SOGI

instruction.

171.    The Defendants cannot justify their discrimination against religion by any

compelling interest, and, assuming *arguendo* an applicable compelling interest, they

have failed to implement their infringement against the free exercise of religion in the

least restrictive manner available, as the policy is both overinclusive and

underinclusive.

WHEREFORE, the Plaintiff requests that this Court grant the relief requested

in the Requests for Relief.

## COUNT XI
## 42 U.S.C. §1983
## OFFICIAL ANIMUS AGAINST FREE EXERCISE OF RELIGION—U.S. CONSTITUTION

172.     The Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

173.     State actors violate the Free Exercise Clause of the U.S. Constitution when they act with animus toward the free exercise of religion in carrying out their responsibilities.

174.     The Defendants acted with animus toward the free exercise of religion in denying Plaintiff's religious exemption request.  This was demonstrated, *inter alia*, (a) by labeling traditional religious beliefs concerning homosexual and transgender actions as engendering hate; and (b) by placing LGBT-SOGI+ instruction throughout the curriculum, instead of limiting it to the FLHS curriculum,

175.     No interest can justify animus toward the free exercise of religion.  However, the Defendants lacked a compelling interest to deny Plaintiff's religious exemption request, and did not implement it in the least restrictive way.

        WHEREFORE, the Plaintiff requests that this Court grant the relief requested in the Requests for Relief.

## COUNT XII
## OFFICIAL ANIMUS AGAINST FREE EXERCISE OF RELIGION— MARYLAND CONSTITUTION

176.     The Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

177.     The free exercise protections of the Maryland Constitution are violated when state actors act with animus toward the free exercise of religion in carrying out their responsibilities.

178.     The Defendants acted with animus toward the free exercise of religion in adopting and implementing the No-Opt-Out Policy.  This was demonstrated, *inter alia*, (a) by labeling traditional religious beliefs concerning homosexual and transgender actions as engendering hate; and (b) by placing of LGBT-SOGI instruction throughout the curriculum, instead of limiting it to the FLHS curriculum, to avoid the opt-out provisions provided to parents and students by law.

179.     No interest can justify animus toward the free exercise of religion.  However, the Defendants lacked a compelling interest to deny Plaintiff's religious exemption request, and did not implement it in the least restrictive way.

WHEREFORE, the Plaintiff requests that this Court grant the relief requested in the Requests for Relief.

## **CONCLUSION**

MCPS has violated the U.S. Constitution, the Maryland Declaration of Rights, statutory law,  COMAR and its own regulations in multiple respects.  The only effective relief in these circumstances is to allow Plaintiff to opt out his child who is now a senior (and poised to graduate) from the entire Health course and to enjoin MCPS and MCBE from requiring Plaintiff's child to take that course as part of the graduation requirements, and a temporary restraining order prohibiting Defendants

from refusing to permit Plaintiff's child to participate in graduation exercises and to graduate from DHS on May 30, 2025.

## **REQUESTS FOR RELIEF**

The Plaintiff respectfully requests that this Court grant the following relief:

1.      Temporary, preliminary, and permanent injunctive relief requiring Defendants to permit Plaintiff's child to graduate from DHS without penalty, assuming all other graduation requirements (except the Health credit) are met.

2.      Temporary, preliminary, and permanent injunctive relief requiring Defendants to permit Plaintiff's child to participate in the high school graduation exercises for DHS scheduled for May 30, 2025, assuming all other graduation requirements (except the Health credit) are met.

3.      Temporary, preliminary, and permanent injunctive relief requiring Defendants to award Plaintiff's child his high school diploma from DHS, assuming all other graduation requirements (except the Health credit) are met.

4.      A declaration that, in the circumstances here, Plaintiff is allowed to opt out his child from the entire Health course.

5.      A declaration that the Defendants must make curriculum, including lesson plans, available in advance for parents to review so they can determine whether it includes instructional material contrary to his religious or other beliefs and so they can exercise his parental rights intelligently and effectively;

6.      A declaration that the Defendants must make curriculum, including lesson plans, available in advance for parents to review so they can determine whether it includes instructional material that is properly classified as FLHS material;

7.      A declaration that COMAR 13A.04.18.01.D(2) and MCBE Regulation IGP-RA require MCPS to restrict instruction related to FLHS objectives to the FLHS part of the Health curriculum.

8.      A declaration that the Defendants may not provide students instruction meeting the FLHS objectives outside of FLHS classroom instruction to which parents and students have had advance notice and a right to opt out of such instruction;

9.      A declaration that instruction regarding LGBT-SOGI topics relates to family life and human sexuality objectives.

10.      A declaration that, under COMAR 13A.04.18.01.D(2) and MCBE Regulation IGP-RA, parents and students have a right to advance notice of instruction that relates to family life and human sexuality objectives, wherever that instruction is taught.

11.      A declaration that the Plaintiffs under COMAR 13A.04.18.01 may opt out his minor child from instruction regarding LGBT-SOGI;

12.      A declaration that the Plaintiffs under MCBE Regulation IGP-RA may opt out his minor child from instruction regarding LGBT-SOGI;

13.      A declaration that the Plaintiffs under MCPS's *Guidelines for Respecting Religious Diversity* may opt out his minor children from instruction regarding LGBT-SOGI;

14.     A judgment awarding the Plaintiff damages in excess of $75,000.00 for

violation of his rights and economic and emotional harm;

15.     Award of reasonable attorney fees and expenses, including those available

under 42 U.S.C. § 1988;

16.     Award of the other costs of this litigation; and

17.     Such other relief that is just and permissible by law.

**I DO SOLEMNLY DECLARE AND AFFIRM** under the penalties of
perjury that the matters and things contained in the foregoing are true to the best of my
information, knowledge, and belief.

[SIGNATURE PAGE ATTACHED]
_____

**SETH GOTTESMAN**

DATE  [SIGNATURE PAGE ATTACHED]
      _____

## JURY TRIAL DEMAND

Pursuant to Md. Rule 2-325(a), Plaintiff hereby elects a trial by jury of all

issues in the above-captioned matter that are triable of right by a jury.

Respectfully submitted,

[SIGNATURE PAGE ATTACHED]
_____
Paul R. Rivera
Paul R. Rivera, Attorney at Law
P.O. Box 394
Rockville, Md. 20848
(301) 949-6367
*law.rivera@gmail.com*
CPF ID# 9806240163
Attorney for Plaintiff

14.     A judgment awarding the Plaintiff damages in excess of $75,000.00 for

violation of his rights and economic and emotional harm;

15.     Award of reasonable attorney fees and expenses, including those available

under 42 U.S.C. § 1988;

16.     Award of the other costs of this litigation; and

17.     Such other relief that is just and permissible by law.

**I DO SOLEMNLY DECLARE AND AFFIRM** under the penalties of
perjury that the matters and things contained in the foregoing are true to the best of my
information, knowledge, and belief.

_____

SETH GOTTESMAN

DATE ___5/14/25___

## JURY TRIAL DEMAND

Pursuant to Md. Rule 2-325(a), Plaintiff hereby elects a trial by jury of all
issues in the above-captioned matter that are triable of right by a jury.

Respectfully submitted,

*/s/ Paul R. Rivera, Esq.*

Paul R. Rivera
Paul R. Rivera, Attorney at Law
P.O. Box 394
Rockville, MD 20848
(301) 949-6367
law.rivera@gmail.com
CPF ID# 9806240163
Attorney for Plaintiff

- 50 -