## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

SETH GOTTESMAN             :
                          :
      **Plaintiff,**       :
                          :
  **v.**                   :     **Case No. 8:25-cv-01682-DKC**
                          :
MONTGOMERY COUNTY BOARD    :
OF EDUCATION, *et al.*      :
                          :
**Defendants.**            :

## TABLE OF CONTENTS FOR MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

I.    STATEMENT OF THE CASE ........................................................................... 1

II.   PLAINTIFF'S STATEMENT OF RELEVANT FACTS ................................ 3

III.  STANDARD OF REVIEW ............................................................................. 7

IV.  ARGUMENT ................................................................................................... 8

    A.  MCPS Is Not a Proper Party and Must Be Dismissed with Prejudice .................... 8

    B.  Plaintiff's Claims Against Defendant Taylor Must Be Dismissed Due to Lack of Personal Involvement ................................................................. 9

    C.  Group Allegations Against "Defendants" are Insufficient to State a Claim and Do Not Provide Fair Notice to the Defendants ............................................ 10

    D.  Plaintiff's Claims Under Section 1983 Must be Dismissed for Failure to State a Cause of Action for Any Defendant on which Relief can be Granted (Counts IV, VI, VII, IX, and XI) ................................................................. 11

        i.   *BOE Is Not a Person and the Official Capacity Claims Against Taylor, Rohner and Allen Are Not Cognizable as They are Actually Claims Against the State* ............................................................... 11

        ii.  *Plaintiff Fails to State a Violation of the Free Exercise Clause of the U.S. Constitution, First Amendment (Counts VII, IX, XI).* ............. 12

iii.  *Plaintiff Fails to State Religious Discrimination or Official Animus Claims Pursuant to the U.S. Constitution (Counts IX, XI)* ..............16

iv.  *Plaintiff Fails to State a Claim for Violation of His Due Process Rights Under the Fourteenth Amendment (Count IV)* ..............................18

v.  *Plaintiff Fails to State a Claim for Violation of His Due Process Rights Under the PPRA Because There is No Private Cause of Action (Count IV)* ...................................................................................................19

E.  Primary Jurisdiction Doctrine Prevents Consideration of the Claims By This Court (Counts I-XII) ............................................................................................20

F.  The Parents of Another Damascus High School Senior Have Litigated the Same Claims Before the State Board of Education and the Montgomery County Circuit Court and Lost..........................................................................................25

G.  The Complaint Fails to State a Claim Upon Which Relief Can Be Granted Related to Violations of MCPS Regulation IGP-RA, or the Guidelines for Religious Diversity (Counts I-III) ............................................................................................27

H.  Maryland Declaration of Rights Claims are Derivative of the Federal Counterparts and Must be Dismissed (Counts V, VIII, X, XII)....................................28

I.  Individuals Defendants Taylor, Rohner, and Allen are Entitled to Qualified Immunity on Federal Claims ..................................................................29

V.    CONCLUSION............................................................................................33

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **SETH GOTTESMAN** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 8:25-cv-01682-DKC** |
| | : | |
| **MONTGOMERY COUNTY BOARD** | : | |
| **OF EDUCATION,** *et al.* | : | |
| | : | |
| **Defendants.** | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

**COME NOW** Defendants, Board of Education for Montgomery County (BOE), improperly identified in the Complaint as "Montgomery County Board of Education", Montgomery County Public Schools (MCPS), Thomas W. Taylor, Bradley Rohner, and Yolanda Allen, by and through their undersigned attorneys, and hereby move this Honorable Court to dismiss Plaintiff's Complaint with prejudice and submit the following Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Complaint.

I.      **STATEMENT OF THE CASE**

On May 14, 2025, the Plaintiff, Seth Gottesman, filed this case in both his individual capacity and as the next friend of his minor son, T.G, against the BOE; MCPS; Thomas W. Taylor, Superintendent of MCPS; Bradley Rohner, Principal of Damascus High School ("DHS"); and Yolanda Allen, Director of the Office of School Support and Improvement. The Complaint alleges Constitutional violations, including infringement of parental rights, refusal to allow review of curricular materials, violation of free exercise of religion, discrimination against free exercise of religion, and official animus toward the free exercise of religion. Plaintiff also asserts

1

corresponding claims pursuant to the Maryland Declaration of Rights, and alleged violations of

COMAR and MCPS regulations and guidelines for religious diversity. The Complaint sets forth

the following causes of action:

| | |
|---|---|
| Count I | Violation of Regulations Providing for Opt-Out for Family Life and Human Sexuality Instruction |
| Count II | Violation of Guidelines Providing for Opt-Out for Religious Reasons |
| Count III | Violation of Regulation KLA-RA Providing for Administrative Resolution of Complaint from the Public |
| Count IV | 42 U.S.C. § 1983 – Violation of Parental Rights—U.S. Constitution |
| Count V | Violation of Parental Rights—Maryland Constitution and Statute |
| Count VI | 42 U.S.C. § 1983 – Refusal to Allow Review of Curricular Materials in Violation of U.S. Constitution and Federal Law |
| Count VII | 42 U.S.C. § 1983 – Violation of the Free Exercise of Religion—U.S. Constitution |
| Count VIII | Violation of the Free Exercise of Religion—Maryland Constitution |
| Count IX | 42 U.S.C. § 1983 – Discrimination Against Free Exercise of Religion—U.S. Constitution |
| Count X | Discrimination Against the Free Exercise of Religion—Maryland Constitution |
| Count XI | 42 U.S.C. § 1983 – Official Animus Against Free Exercise of Religion—U.S. Constitution |
| Count XII | Official Animus Against Free Exercise of Religion—Maryland Constitution |

Plaintiff seeks injunctive, declaratory, and monetary relief.

One week after serving the Complaint, on May 23, 2025, Plaintiff moved for a temporary

restraining order (TRO) seeking in pertinent part: 1) T.G.'s official participation in Damascus

High School graduation exercises on May 30, 2025; 2) T.G.'s graduation from Damascus High

School without penalty; 3) Enjoin Defendants from withholding T.G.'s diploma on the basis of

failure to complete the health course.

On May 27, 2025, Defendants removed this action to federal court pursuant to the Federal

Rules of Civil Procedure and 28 U.S.C. §§ 1441 and 1446. Defendants opposed the Motion for

TRO on May 28, 2025, and a hearing was held on May 30, 2025. This Court denied Plaintiff's

Motion for TRO. The Complaint must be dismissed because Plaintiff has failed to state a claim

on which relief can be granted for any Count in the Complaint.

## II.    PLAINTIFF'S STATEMENT OF RELEVANT FACTS

The Montgomery County Public School system is the largest in Maryland and serves approximately 160,000 students from diverse backgrounds. T.G. is a 12th grade senior at Damascus High School who did not graduate on May 30, 2025 because he had not taken the mandatory Health Education Course which is required by the Maryland State Department of Education. *See* ECF No. 2, ¶ 2, COMAR 13A.04.18.01.

In order to graduate from a MCPS high school, students are required to complete a one-credit Health Education Course, which includes 6 units, one of which is "Family Life and Human Sexuality" (FLHS). *Id.* at ¶ 16, COMAR 13A.03.02.03C(5). Families are given advance notice of the FLHS materials to be used and have a right to opt their child out from that particular unit of instruction. *Id.* at ¶¶ 17, 63; COMAR 13A.04.18.01D(2); Local Board Regulation IGP-RA. However, these students must still complete the remaining five sections of the health class to receive the requisite credit for graduation. COMAR 13A.03.02.03, COMAR 13A.04.18.01D, and Local Board Reg. IGP-RA. If a family is unsatisfied with the opt-out, a student is able to complete the health curriculum requirement by availing himself of an alternative, such as a course a Montgomery County Community College which offers both in person and online options, or an independent study. COMAR 13A.04.18.01(D)(2)(e); Montgomery County Public Schools Regulation, ISB-RA; Ex. 1, Dr. Yolanda Allen ("Allen") September 22, 2024 email also filed at ECF 3, Exhibit 13.[1] Plaintiff alleges that, in early 2022, he became aware that MCPS had

---

[1] ISB-RA sets forth the requirements for an Independent Study. Students are responsible for initiating and planning their independent study program, in cooperation with an appropriately certified teacher and parents/guardians, and producing evidence of learning under the supervision of an appropriately certified teacher. The teacher is responsible for evaluating the student's mastery of course objectives, goals, or standards and recommends to the principal an appropriate grade and credit award. Surely, if Plaintiff objected to the Montgomery College course content, he could

incorporated LGBT-SOGI (lesbian, gay, bisexual, transgender, sexual orientation and identity) instruction throughout the Health course rather than limiting it to the FLHS unit, thereby allegedly violating state regulations and parental opt-out rights. ECF 2*,* ¶ 18. Despite requests to review all of the Health course materials, MCPS denied Plaintiff access. *Id.* at ¶ 20. Plaintiff further contends that he filed a Maryland Public Information Act (MPIA) request, but MCPS imposed excessive fees ranging from $250 to $5,000, in violation of state and federal laws mandating parental access to instructional materials. *Id.* at ¶¶ 27-28.

On February 4, 2023, Plaintiff filed a formal administrative complaint ("Complaint From the Public" or "CFP") seeking a religious exemption for his child from the entire Health course. *Id.* at ¶ 29. Plaintiff alleges that MCPS failed to follow its own procedures, delayed its response for 18 months, and ultimately denied the exemption in September 2024. *Id.* at ¶ 39.

Between September 10 and October 22, 2024, Plaintiff engaged in correspondence with MCPS personnel, including staff at Damascus High School (DHS) and systemwide MCPS officials, regarding the denial of the religious exemption for his child, T.G. *Id.* at ¶ 40. On October 16, 2024, Plaintiff contacted Defendant Bradley Rohner, Principal of DHS, claiming MCPS's violations of the CFP process, the harm caused to T.G., and his position that MCPS could not deny the exemption at such a late stage. *Id.* at ¶ 41.

On October 22, 2024, Dr. Yolanda Allen, Director of the Office of School Support and Improvement, responded to Plaintiff. *Id.* at ¶ 42; Ex. 1. She reiterated the Health course requirement for T.G., proposed alternative options, and informed him of the appellate process. *Id.*

---

have worked to develop a non-objectionable independent study. ECF 2, ¶ 42; MCPS Regulation, ISB-RA (revised January 2024).

Re: [EXTERNAL] Withdraw from Health A

**From** Allen, Yolanda R <Yolanda_R_Allen@mcpsmd.org>
**Date** Tue 10/22/2024 1:15 PM
**To** Seth Gottesman <sgottesman@hotmail.com>; Rohner, Bradley W <Bradley_Rohner@mcpsmd.org>; msefcik@hotmail.com <msefcik@hotmail.com>
**Cc** Saltzman, Adam H <Adam_H_Saltzman@mcpsmd.org>; Taylor, Thomas W <Thomas_W_Taylor@mcpsmd.org>; Dawson, Eugenia S <Eugenia_S_Dawson@mcpsmd.org>; McGee, Sean P <Sean_P_McGee@mcpsmd.org>; Moran, Peter O <Peter_Moran@mcpsmd.org>

. . .

While I understand and respect your position, we are unable to grant ■ a diploma without fulfilling the credits required in this subject area.
We are still here to help you navigate the available options, which are outlined below, and we encourage you to reach out if you need assistance with any of these pathways:

- **Independent Study**: ■ can complete an independent study with an MCPS staff member using the same MCPS Health curriculum.
- **College Course**: ■ can enroll in a college-level course that aligns with local board policy. For example, Montgomery College offers **HLTH 105 – Personal and Community Health**, which would provide 1.0 MCPS credit for Health A/B. Although the deadline for Semester 1 has passed, this could be a viable option for Semester 2.

Additionally, if you believe the curriculum review process or its outcome did not address your concerns, I have included the link to the appeals process for your reference. Please feel free to reach out if you need guidance on the next steps.

https://www.montgomeryschoolsmd.org/departments/appeals/complaint-from-the-public-cfp/

Ex. 1.

Plaintiff claims that despite submitting an appeal to the Montgomery County Board of Education in December 2024, Plaintiff received no acknowledgment or response. *Id.* at ¶ 44. MCPS later informed Plaintiff that T.G. had not earned the required Health Education credit and would be barred from graduating or participating in commencement exercises scheduled for May 30, 2025. *Id.* at ¶ 49.

Plaintiff alleges that MCPS violated its own regulations, the Maryland Administrative Procedure Act (M.A.P.A.), the Free Exercise Clause of the U.S. Constitution, the Maryland Declaration of Rights, and other legal provisions by denying his child a religious exemption and integrating LGBT-SOGI resources throughout the Health course. *Id.* at ¶¶ 50-55. He cites prior litigation and administrative rulings in which he says MCPS admitted to incorporating LGBT-SOGI topics throughout the Health curriculum, despite state regulations requiring such instruction to remain confined to the FLHS unit. *Id.* at ¶¶ 56-59.

Plaintiff curiously cites to the holding of the Maryland State Board of Education, *T.J. and D.J. v Montgomery County Board of Education*, MSBE Op. No. 24-10 (4/20/2024), which actually supports the MCPS curriculum:

> Maryland's comprehensive health education regulations require education surrounding mental and emotional health, substance abuse prevention, and safety and violence prevention. The incorporation of LGBTQ+ resources would assist in that curriculum's primary objective to help students adopt and maintain behaviors that protect and promote health and avoid or reduce health risk. COMAR 13A.04.18.01B. *We agree with the local board [MCBE/MCPS] that incorporation of LGBTQ+ resources throughout the entire health classroom* fulfills MCPS' fundamental responsibility to include instructional materials that reflect the diversity of the local and global community. Incorporation of LGBTQ+ resources acknowledge the diverse identities and experiences present within the student body and it aims to foster an inclusive environment."

*Id.* at ¶ 58 (emphasis in Complaint).

Plaintiff contends that this material conflicts with his religious beliefs and "worldview", which hold that sex and gender are immutable, and individuals should act in accordance with their biological sex. *Id.* at ¶¶ 61-62. He outlines the legal framework governing FLHS instruction, including COMAR regulations, the Health Framework, and MCPS policies, which grant parents the right to opt their children out of FLHS instruction. *Id.* at ¶¶ 63-75. Plaintiff alleges that MCPS violated these provisions by expanding LGBT-SOGI resources throughout the Health course and revising its religious diversity guidelines in 2023 to eliminate opt-out rights for curricular content, even though he acknowledges that he was presented with several alternative options.

Plaintiff further claims that MCPS's actions have infringed on his parental rights, free exercise of religion, and ability to direct his child's education. *Id.* at ¶ 102. He argues that MCPS's refusal to provide access to instructional materials and its denial of the opt-out request for the entire health curriculum have caused significant harm to him, his child, and the public interest. *Id.* at ¶¶ 105-107.

Despite knowing of the mandatory Health course graduation requirement for years—and having been aware for at least nine months that his exemption request was denied—Plaintiff disregarded independent study and college class alternatives available to satisfy the requirement. Instead, he now seeks relief through this lawsuit, even though Fourth Circuit precedent, prior State Board of Education rulings, and decisions from the Circuit Court for Montgomery County have rejected the same arguments he raises here. Accordingly, Plaintiff has failed to state a claim upon which relief can be granted, and the Complaint must be dismissed.

## III.    STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), a court may dismiss a complaint when the allegations of fact do not properly state a claim on which relief can be granted. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 67 L. Ed. 2d 929 (2007). Further, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. A plaintiff has the burden of pleading "more than a sheer possibility that a defendant acted unlawfully," and to meet that burden, must make more than "naked assertions of wrongdoing" without any "factual enhancement." *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (citations and internal quotations omitted).

On a motion to dismiss, the Court may consider authentic documents that are explicitly incorporated into the complaint by reference or that are integral to the complaint. *See e.g. Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164, 166 (4th Cir. 2016). This Court may also take judicial notice of matters of public record, without converting a motion to dismiss into one for

summary judgment. *See Powell v. Countrywide Bank*, Civil Action No. PX 16-1201, 2016 U.S. Dist. LEXIS 138838, at *2 n.1 (D. Md. Oct. 4, 2016). As such, in evaluating this motion to dismiss, the Court may consider Def. Ex. 1, Dr. Allen September 22, 2024 email, incorporated by reference and/or relied upon in the Complaint,[2] which is a public record from Plaintiff's case and the authenticity of which cannot be challenged. "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines,* 822 F.3d at 167; *Moss Thompson v. Badgujar*, No. 20-cv-1272-PWG, 2021 U.S. Dist. LEXIS 147923, at *10 (D. Md. Aug. 6, 2021)

## IV.    ARGUMENT

### A.  MCPS Is Not a Proper Party and Must Be Dismissed with Prejudice.

MCPS is not a distinct legal entity empowered to sue or be sued. *See Miller v. Montgomery Cty. Pub. Schs.*, Case No. TJS-19-3067, 2020 U.S. Dist. LEXIS 77194, at *3 (D. Md. May 1, 2020) (dismissing the plaintiff's claims against MCPS with prejudice and stating that the Board of Education for Montgomery County is the entity that can be sued for the plaintiff's claims). In Maryland, the legislature established a board of education for each county school system and the City of Baltimore. *See generally* MD. CODE ANN., EDUC. §3-103, *et seq.* The legislature created "[e]ach county board [as] a body politic and corporate . . ," and then gave each individual county board the authority to "sue and be sued . . . ." MD. CODE ANN., Educ. §§3-104(a) and (b)(2). Since the Board of Education for Montgomery County, not MCPS, holds this authority, Plaintiff's claims against MCPS should be dismissed with prejudice, as the proper entity is already a defendant in this case.

---

[2] *See e.g.* ECF 2, ¶ 42 (relying upon and/or incorporating by reference Ex. 1, Allen email).

**B. Plaintiff's Claims Against Defendant Taylor Must Be Dismissed Due to Lack of Personal Involvement**

The Complaint against Superintendent Thomas W. Taylor must be dismissed in its entirety because aside from his name appearing in the case caption, Plaintiff fails to mention Superintendent Taylor in a single fact or allegation throughout the entire Complaint. Plaintiff fails to identify any personal involvement by Taylor in the purportedly unlawful actions which took place against him. Given the lack of personal involvement by Taylor in the alleged violations, there is no factual support for any claim against him in his individual capacity. *Felder v. Leggett*, Civil Action No. ELH-  16-3469, 2017 U.S. Dist. LEXIS 63372, at *10-12 (D. Md. Apr. 16, 2017). In *Felder*, the plaintiff sued several Montgomery County police officers for violating his constitutional rights after they pursued him from Montgomery County into Washington, DC before arresting him. The plaintiff therein also sued a supervisory official and the County Executive in their individual capacity, but the plaintiff did not allege any personal involvement by those defendants in his arrest. *Id*. at *10. The District Court therefore dismissed the claims against the supervisor and the County Executive in their individual capacity. *Id*.; *See also Rizzo v. Goode*, 423 U.S. 362, 377 (1976) (official not liable unless directly involved or personally participating in conduct depriving plaintiff's constitutional rights).

Similarly, here, Plaintiff does not allege that Superintendent Taylor had any personal involvement in the alleged denial of Plaintiff's requested exemption from the health curriculum and/or his ability to participate in the graduation ceremony and receive a diploma. Nor has Plaintiff asserted any facts to support a claim of supervisory liability as to Superintendent Taylor. As such, the claims against Taylor in his individual capacity must be dismissed.

To the extent Plaintiff is asserting claims against Taylor in his official capacity, they must also be dismissed because official capacity claims against Taylor are "essentially, an action against

9

the municipal government." *Felder*, 2017 U.S. Dist. LEXIS 63372, at *10, *citing Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "Consequently, 'the real party in interest in an official-capacity suit is the government entity and not the named official.'" *Corral v. Montgomery Cty.*, 4 F. Supp. 3d 739, 748 (D. Md. 2014) (*citing Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Therefore, "when claims are brought against a municipal official in his official capacity which are identical to claims bought against the municipality, the claims against the municipal official are redundant." *Coral*, 4 F. Supp. 3d at 748. Accordingly, to the extent Plaintiff's claims are against Taylor in his official capacity, they should also be dismissed.[3]

**C. Group Allegations Against "Defendants" are Insufficient to State a Claim and Do Not Provide Fair Notice to the Defendants.**

"A plaintiff does not satisfy [Federal Rule of Civil Procedure], Rule 8 when the complaint lump[s] all the defendants together and fail[s] to distinguish their conduct because such allegations fail to give adequate notice to the defendants as to what they did wrong." *Classen Immunotherapies, Inc. v. Biogen IDEC*, 381 F. Supp. 2d 452, 455 (D. Md. 2005) (granting a motion to dismiss). Courts routinely dismiss claims that are collectively pleaded against multiple defendants without identifying what conduct is attributable to a specific defendant. *See Fox v. City of Greensboro*, 807 F. Supp. 2d 476 (M.D.N.C. 2011) (granting motion to dismiss for failure to allege specific conduct as to each defendant).

Here, Plaintiff repeatedly groups the three individual, and two entity Defendants together and often collectively refers to them as the "defendants" without attributing any particular act to a specific defendant that would support a cause of action. *See* ECF No. 2, ¶¶ 113-114, 118-119, 121-123, 126, 129, 131-132, 141-144, 152, 154-155, 159, 161-162, 165-166, 170-171, 174-175, 178-

---

[3] To the extent the Complaint is not dismissed as to Superintendent Taylor in its entirety based on the absence of any allegations of wrongdoing on his part, he joins in the arguments asserted by the other Defendants with respect to the remainder of the claims.

179. Plaintiff commingles the causes of actions against all Defendants in a misguided attempt to hold each of them jointly and severally liable for all of the wrongs alleged. This failure is fatal because "in a suit arising under 42 U.S.C. § 1983, … liability attaches only upon a defendant's personal participation in the constitutional violation." *Tyner v. Harford Cty.*, Civil Action No. PWG-19-2529, 2021 U.S. Dist. LEXIS 38820, at *14 (D. Md. Mar. 2, 2021). Plaintiff's failure to provide the individual Defendants with notice of the specific claims that are being made against each of them is woefully inadequate to meet basic pleading requirements as further set forth below.

This style of pleading runs afoul of Rules 8 and 12 under *Twombly*'s requirement that, to survive a motion to dismiss, the plaintiff must "raise a right to relief above the speculative level" by alleging "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555. Therefore, this Court should dismiss all claims with prejudice.

**D. Plaintiff's Claims Under Section 1983 Must be Dismissed for Failure to State a Cause of Action for Any Defendant on which Relief can be Granted (Counts IV, VI, VII, IX, and XI).**

   *i. BOE Is Not a Person and the Official Capacity Claims Against Taylor, Rohner and Allen Are Not Cognizable as They are Actually Claims Against the State*

Plaintiff makes claim under 42 USC §1983 against "all defendants." However, the specific language of 42 USC §1983 makes clear that no claim may be brought against Defendant BOE because the BOE is not a "person." It is patent that the BOE is not a "person" because it is a State agency rather than a county or municipal agency. As recently as 2023, this Court found with respect to the Montgomery County Board of Education that, "the Section 1983 claim must be dismissed because the Defendant is not a 'person' as required by Section 1983. As the Defendant correctly argues, various courts have found that school boards, such as the Board of Education for Montgomery County, are arms of the state and therefore not subject to liability under Section 1983." *Jabari-Kitwala v. Montgomery Cnty. Pub. Sch.*, No. CV GLS 22-0069, 2023 WL 4175359,

at *8 (D. Md. June 23, 2023) (citations omitted). *See, also, James v. Frederick County Pub. Schs.*, 441 F.Supp.2d 755, 760 (D. Md. 2006) (dismissing 42 U.S.C. § 1983 claims against the Board of Education of Frederick County on the basis that "[t]his court has made clear, consistently and repeatedly, that the county boards of education of Maryland are state agencies"); *Mayo v. Bd. of Educ. of Prince George's Cnty.*, 797 F. Supp. 2d 685, 689 (D. Md. 2011) aff'd, 713 F.3d 735 (4th Cir. 2013) ("State agencies are not "persons" within the meaning of § 1983 . . . and the Eleventh Amendment bars damage claims against state agencies and their officials.").

Likewise, since county school boards are State agencies, school officials acting in their official capacities are also acting as the State and are not "persons." *See Rossingnol v. Voorhaar*, 321 F. Supp. 2d 642, 650 (D. Md. 2004) ("holding that, in suits for damages, 'neither a State nor its officials acting in their official capacities are "persons" under **§** 1983[,]' since suits against officials acting in their official capacity are indistinguishable from suits 'against the State itself ' ") quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L.Ed.2d 45, 58 (1989); *Schiffbauer*, 95 F. Supp. 3d at 852; *J.G. v. Bd. of Educ.*, 2017 U.S. Dist. LEXIS 33597, at *9; *Borkowski*, 414 F. Supp. 3d at 805. As such, Defendants Taylor, Rohner and Allen in their official capacities are not amenable to suit under § 1983.

The Board, as a State agency, and the Individual Defendants in their official capacity, are not "persons" subject to suit for damages under Section 1983. Accordingly, the claims for relief under 42 USC §1983 must be dismissed with prejudice as to the BOE and Individual Defendants in their official capacities.

    ii.  *Plaintiff Fails to State a Violation of the Free Exercise Clause of the U.S. Constitution, First Amendment (Counts VII, IX, XI).*

Plaintiff alleges that "Defendants" denial of his request for T.G. to opt out of the entire health curriculum infringes upon his constitutional right to the free exercise of his religion.

However, the court's decision in *Mahmoud v. McKnight*, 688 F. Supp. 3d 265 (D. Md. 2023), *aff'd*, 102 F.4th 191 (4th Cir. 2024), *cert. granted sub nom. Mahmoud v. Taylor*, 145 S. Ct. 1123, 220 L. Ed. 2d 420 (2025), provides critical guidance on this issue and directly forecloses Plaintiff's claim. In *Mahmoud v. McKnight*, 688 F. Supp. 3d 265 (D. Md. 2023) ("*Mahmoud I*"), a group of parents challenged MCPS's decision to include LGBTQ-inclusive books in the English Language Arts curriculum without providing advance notice or an opt-out option for parents. Alternatives to the English Language Arts curriculum were not provided. The parents, who held various religious beliefs, argued that under *Wisconsin v. Yoder*, 406 U.S. 205 (1972), strict scrutiny should apply to the MCPS decision to deny the right to opt out. *Mahmoud I* at 288.

However, this court rejected that argument, ruling that *Yoder* was "inexorably linked to the Amish community's unique religious beliefs and practices" and has no application to other religions. *Id.* at 294. The court held that rational basis was the proper level of scrutiny which "requires only that the [challenged state action] be shown to bear some rational relationship to legitimate state purposes." *Mahmoud* I, 688 F. Supp. 3d at 306. The court ruled that the plaintiffs had not proven that the schools would coerce the children to change their beliefs, so there was no substantial burden on the free exercise of religion. *Id.* at 301. The court emphasized that, "[p]ublic schools are not obliged to shield individual students from ideas which potentially are religiously offensive, particularly when the school imposes no requirement that the student violate his or her faith during classroom instruction." *Id.* at 298. Accordingly, this Court concluded that no government action restricted the parents' ability to freely discuss the topics introduced in the books with their children or to educate them in accordance with their beliefs. *Id.*; *See also, T.J. and D.J. v. Montgomery County Board of Education*, MSBE Op. No. 24-10 (2024), quoting the *Mahmoud*

13

language. Ex. 2, p. 8; (also filed as ECF No. 3, Ex. 22).[4]

The Fourth Circuit affirmed this ruling, holding that, "to show a cognizable burden, the Parents must show that the absence of an opt-out opportunity coerces them or their children to **believe** or **act** contrary to their religious views." *Mahmoud v. McKnight*, 102 F.4th 191, 208 (4th Cir. 2024) (*"Mahmoud II")*. Like the district court, the Fourth Circuit decided there was no coercion (*id.* at 209), and it ratified the district court's limited reading of *Yoder (id.* at 211).

Like the plaintiffs in *Mahmoud*, Plaintiff fails to establish coercion or forced participation in the alleged "LGBTQ+ instruction." The health curriculum merely includes LGBTQ+ resources in portions of the health units mandated by the State of Maryland, and Defendants do not require Plaintiff's child to endorse, accept, or alter religious beliefs as a condition of completing the course. Moreover, unlike *Mahmoud*, where no opt-out or alternative coursework was available, MCPS students have other options to satisfy the health curriculum. They can opt out of the FLHS unit and take the remaining five sections, they can attend an in-person or online class at Montgomery County Community College, or they can pursue an independent study at MCPS to satisfy the health curriculum requirement. Plaintiff could have availed himself of these alternatives to avoid potential exposure to whatever teaching he suspected would conflict with his religious beliefs. Under *Mahmoud*, the lack of coercion is fatal to Plaintiff's claim.

Further, the Constitution does not require local school systems to exempt a student from a course based on religious grounds. *Yasmean W. v. Howard County Board of Education,* MSBE Op. No. 13-56 (2013)(holding that a student's request for a religious exemption from music class

---

[4] Although not binding on this Court, given the narrow issue presented by this case—whether Plaintiff may opt out of the entire health education curriculum despite the State's graduation requirements—it is persuasive that the Maryland State Board of Education in *T.J.*, MSBE Op. No. 24-10, previously addressed a nearly identical claim and upheld the school system's policy. The State Board cited *Mahmoud I*, in concluding that merely exposing students to curriculum content does not burden religious exercise absent evidence of indoctrination or coercion.

is not constitutionally required). In *Yasmean W.*, the Board specified that parents have a right to decide *whether* to send their children to public school, but they do not have a fundamental right to direct *how* a public school teaches the child. Ex. 3, Op. No. 13-56, p. 2; Ex. 2, p. 8.

Similarly, in *T.J.*, MSBE Op. No. 24-10, the State Board of Education determined that MCBOE's refusal to permit parental waivers for all six instructional units in the health course did not infringe on their free exercise right because: (a) "merely exposing [their student] to ideas that contradict [the student's] or [the] parents' religious beliefs does not burden religious exercise because the [Petitioners] failed to show the [Local Board's decisions] likely will result in the indoctrination of their children or otherwise coerce their children to violate or change religious beliefs;" and (b) the "Constitution does not require a local school system to exempt a student from a course based on religious grounds."

On December 23, 2024, the Montgomery County Circuit Court denied the *T.J.* parents' petition for judicial review of the State Board Opinion. Ex. 4, also filed at ECF No. 8-6, Def. Ex. D. In *Timothy and Dagmar Janss v. MCBOE*, Case No. 15-cv-24-002588 (Circuit Court, Dec. 23, 2024), the Court first determined that the decision to incorporate "more inclusive language, including reference to the diverse LGBTQ+ community, into instructional materials (consistent with the educational equity requirement for each local school board to use materials that are inclusive) is not the same as the LGBTQ+ related direct teaching and instruction that occurs within the FLHS unit of the class." Second, the Court ruled that the parents' argument that any LGBTQ+ reference in the health class violates their "constitutional rights of parental autonomy, freedom of speech, and freedom of religion" is without merit [because n]othing in State law allows for an exemption or opt-out that would, in essence, accommodate their goal of entirely shielding their student from all LGBTQ+ references. And exposing their student to LGBTQ+ materials does not

violate any right under the Constitution." Ex. 4.

Thus, while Plaintiff disagrees with the mention of any LGBTQ+ resource or material in any of the six-units in the health curriculum, the mere exposure of their son to views different than their religious beliefs does not coerce him to violate the family's religious beliefs and there is no constitutional right to an opt-out of the entire health curriculum. Moreover, Defendants provided alternative pathways for Plaintiff's child to fulfill graduation requirements should they choose not to enroll in the MCPS health class. Thus, Defendants in no way coerced Plaintiff to act contrary to his religious beliefs and did not violate Plaintiff's constitutional rights, so Counts VII, IX, and XI must be dismissed with prejudice.

> ### iii. *Plaintiff Fails to State Religious Discrimination or Official Animus Claims Pursuant to the U.S. Constitution (Counts IX, XI).*

To survive a motion to dismiss, Plaintiffs must allege facts "plausibly suggesting (not merely consistent with)" discriminatory intent rather than any "obvious alternative explanation[s]." *Twombly*, 550 U.S. at 568, 557. Plaintiff claims that Defendants discriminated against him in the "application of its opt-out policies to LGBT-SOGI materials, by, *inter alia*, allowing opt-outs for religious reasons for some instruction but not LGBTQ-SOGI instruction, and allowing opt-outs for certain ages but not for others." Plaintiff is mistaken in his interpretation of the opt-outs. As stated and mandated by COMAR 13A.04.18.01(D)(2)(e), students are permitted to opt-out of the FLHS unit of the health curriculum for *any* reason. They are *not* permitted to opt-out of the entire health curriculum. If the entire curriculum is objectionable to the family, they may pursue an approved alternative. Importantly, there are no allegations in the Complaint that students who practice other religions, or students who asserted non-religious reasons, have been permitted to opt-out of the *entire* health curriculum without taking an alternative.

Next, Plaintiff claims that the Defendants acted with official animus towards religion by "labeling traditional religious beliefs concerning homosexual and transgender actions as engendering hate, and [] by placing LGBTQ-SOGI+ instruction throughout the curriculum instead of limiting it to the FLHS curriculum." ECF 2, ¶¶ 174, 178. Importantly, the First Amendment does not guarantee a fair and objective discussion of religious perspectives in public-school classrooms. The Supreme Court has held that school systems "determine[s] the content of the education it provides" and "we have permitted the government to regulate the content of what is or is not expressed when it is the speaker…." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 833 (1995). "A public school prescribing its curriculum … by its nature will facilitate the expression of some viewpoints instead of others." *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 674 (1998). Parents do not have a right to compel the government to communicate a particular viewpoint. "[I]t is not a court's obligation to determine which messages of social or moral values are appropriate in a classroom. Instead, it is the school board, whose responsibility includes the well-being of the students, that must make such determinations." *Lee v. York Cnty. Sch. Div.,* 484 F.3d 687, 700 (4th Cir. 2007).

Plaintiff alleges that Defendants include LGBTQ+ resources throughout the health curriculum. But the mere inclusion of resources and promotion of inclusivity do not rise to the level of official animus. In fact, Plaintiff cites to the MSBE's ruling which makes clear that there was no animus on behalf of the Defendants towards Plaintiff's religion. MSBE specified "[t]he incorporation of LGBTQ+ resources would assist in that curriculum's primary objective to help students adopt and maintain behaviors that protect and promote health and avoid or reduce health risk." In addition, the resources "fulfill[] MCPS' fundamental responsibility to include instructional materials that reflect the diversity of the local and global community,"

"acknowledge the diverse identities and experiences present within the student body," and "aim[]
to foster an inclusive environment." Having shown motivation for a benevolent purpose that does
not include animus to the Plaintiff, Counts IX and XI must be dismissed.

> iv.  *Plaintiff Fails to State a Claim for Violation of His Due Process Rights
> Under the Fourteenth Amendment (Count IV)*

In *Mahmoud I*, this Court ruled that Plaintiff's "asserted due process right to direct their
children's upbringing by opting out of a public-school curriculum that conflicts with their religious
views is not a fundamental right," and so does not trigger strict scrutiny. *Mahmoud I*, 688 F. Supp.
3d at 306; *see also Mahmoud II*, 102 F.4th at 217 (recognizing that "most due process challenges
to public school policies are subject only to rational basis review"). Rational basis review requires
"only that the [challenged state action] be shown to bear some rational relationship to legitimate
state purposes." *Mahmoud I,* 688 F. Supp. 3d at 306 (citing *Herndon*, 89 F.3d at 177; *San Antonio
Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 37–40, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); and *Bethel
World Outreach Ministries v. Montgomery Cnty. Council*, 706 F.3d 548, 561 (4th Cir. 2013).

Here, Defendants do permit an opt-out from the FLHS unit of the health curriculum for
any reason. The inclusion of LGBTQ-SOGI+ *resources* in the balance of the Health curriculum
furthers Defendant BOE's stated legitimate interest (articulated in *Mahmoud I)* in "[f]oster[ing]
social integration and cultural inclusiveness of transgender and gender nonconforming students"
by "ensuring all MCPS students are exposed to inclusive and representative instructional materials
and furthering the [BOE's] interests in providing a safe and supportive learning environment for
its students, protecting LGBTQ students' health and safety, and complying with anti-
discrimination laws. *Id.* Because the curriculum content survives the rational basis analysis, Count
IV must be dismissed.

> v.  *Plaintiff Fails to State a Claim for Violation of His Due Process Rights Under the PPRA Because There is No Private Cause of Action (Count VI)*

Plaintiff alleges that the "Defendants" violated the Protection of Pupil Rights Amendment ("PPRA")'s mandate for Defendant BOE to develop and adopt policies regarding the right of a parent or an eligible student to inspect instructional materials. However, the PPRA does not include an enforceable individual right. *See Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990) (plaintiff will be permitted to sue under § 1983 unless (1) the statute does not create enforceable rights, or (2) "Congress has foreclosed such enforcement of the statute in the enactment itself."); *Stevenson ex rel. Stevenson v. Martin Cnty. Bd. of Educ.,* 3 F. App'x 25, 35 (4th Cir. 2001) (no private right of action under the Safe and Drug–Free Schools and Communities Act because the Act does not put schools on notice that they are open to suit by private parties).

It is well settled that the Family Educational Rights and Privacy Act ("FERPA"), which indisputably parallels the PPRA, does not create enforceable private rights. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 288–290 (2002) (no private right of action exists under FERPA); *Hodge v. Coll. of S. Md.,* 121 F. Supp. 3d 486, 496 (D. Md. 2015) ("FERPA [] does not provide a private right of action"); *Ashby v. Isle of Wight Cnty. Sch. Bd.,* 354 F. Supp. 2d 616, 623 n.9 (E.D. Va. 2004) (FERPA and PPRA "do not create private causes of action"). Both FERPA and the PPRA were originally enacted through Congress' spending power for the same general purpose: to afford protection to parents and students for privacy violations by public schools, or more specifically, by outside researchers. *See* 20 U.S.C. § 1232g (1976) and 20 U.S.C. § 1232h (1982). Both statutes confer a right on the Secretary of the Department of Education to inspect possible violations. Second, while there is no controlling authority in the Fourth Circuit on whether the PPRA allows for a private right of action, the Supreme Court has concluded that "spending legislation drafted in terms resembling [PPRA cannot] confer enforceable rights." *Gonzaga,* 536 U.S. at 279. Third,

because PPRA grants no private rights to any identifiable class, "[t]he question whether Congress ... intended to create a private right of action [is] definitively answered in the negative." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 576 (1979). Therefore, Congress did not intend that the PPRA's provision requiring the development of certain policies directly benefit parents like the Plaintiff. *See Cannon v. University of Chicago,* 441 U.S. 677, 692, n. 13, (1979) (to create private rights the statute must be phrased in terms of the persons benefited).

FERPA's nondisclosure provisions serve primarily to direct the Secretary of Education's distribution of public funds to educational institutions, but parents and eligible students cannot file a Section 1983 action to contest an alleged violation of a student's right to privacy. *Gonzaga,* 536 U.S*., at 290*. Similarly, because the PPRA' policy development provision contains no language creating rights for individual parents such as the Plaintiff and serves primarily to direct the Secretary to monitor compliance with its provisions, this Court should dismiss Count VI of the Plaintiff's complaint for failure to state a claim. Additionally, because the Plaintiff has no private right of action under PPRA his request for declaratory relief likewise fails.

### E.  Primary Jurisdiction Doctrine Prevents Consideration of the Claims By This Court (Counts I-XII)

"The doctrine of primary jurisdiction . . . is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. W. Pac. R.R. Co.,* 352 U.S. 59, 63 (1956). The doctrine "comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Id.,* p. 64; *See also Reiter v. Cooper*, 507 U.S. 258, 269 (1993) (if "relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed.").

"Where the state law provides adequate administrative procedure for the protection of [constitutional] rights, the federal courts manifestly should not interfere with the operation of the schools until such administrative procedure has been exhausted and the intervention of the federal courts is shown to be necessary." *Carson v. Board of Education of McDowell County*, 227 F.2d 789, 790 (4th Cir. 1955)("it is well settled that the courts of the United States will not grant injunctive relief until administrative remedies have been exhausted."); *see also Josephson v. City of Annapolis*, 353 Md. 667, 681, 728 A.2d 690, 696 (1998) (emphasis added) (administrative remedies "must be exhausted before other actions, including requests for *declaratory judgments*, mandamus *and injunctive relief,* may be brought").

A number of factors support the Court's application of the doctrine of primary jurisdiction – 1) the comprehensiveness of the administrative remedy established by Maryland's Education Article, Sections 2-205 and 4-205, for addressing the merits of the Plaintiff's claims regarding COMAR 13A.01.06, COMAR 13A.03.02.03(c)(5) and COMAR 13A.04.18.01; 2) the historical judicial view of the State Board's jurisdiction over any case or controversy regarding the interpretation of public school law; 3) the dependence of the Plaintiff's state law claims on regulations promulgated by the State Board, and 4) the dependence of the resolution of the Plaintiff's claims on the State Board's expertise. *Ross v. Erie Ins. Exch.,* No. CV RDB-24-2414, 2025 WL 962387, at *8 (D. Md. Mar. 31, 2025).

The Maryland Constitution mandates that the General Assembly, "shall by Law establish throughout the State a thorough and efficient System of Free Public Schools." MD Const art VIII § 1. And by the express terms of Maryland's Education Article, the State Board possesses quasi-judicial powers that include the following: (1) with the advice of the Attorney General, explain the true intent and meaning of the Education Article and the Board's bylaws, rules, and regulations

(Md. Code Ann., Educ. § 2-205(e)(1)); (2) decide all controversies and disputes under the
Education Article (Md. Code Ann., Educ. § 2-205(e)(2)); and (3) order public schools to correct
deficiencies if they fail to meet the standards established by the State Board. *Zeitschel v. Bd. of
Ed. of Carroll County*, 274 Md. 69, 81 (1975). And, the Supreme Court of Maryland has
consistently held that "while an agency's interpretation of a statute which it administers is entitled
to weight, the *paramount role of the State Board of Education in interpreting the public education
law sets it apart from most administrative agencies." Bd. of Ed. for Dorchester Co. v. Hubbard,*
305 Md. 774, 790-91,506 A.2d 625, 633 (1986) (emphasis added). Accordingly, Maryland law
assigns resolution of disputes regarding the three regulations referenced in the Plaintiff's
complaint, COMAR 13A.01.06, COMAR 13A.03.02.03(c)(5) and COMAR 13A.04.18.01, to the
Maryland State Board of Education. See *Brown v. Bd. of Ed. of Prince George's Cty., Maryland*,
Case 8:20-cv-02632-DLB, 2023 WL 2410849 (D. Md., 2023) ("Maryland's Education Code
grants the State Board 'primary jurisdiction . . . in questions involving controversies and disputes
that arise under [the Code's] provisions.").

Moreover, the State Board's legal authority in matters of education law and policy has been
described by the courts as "a visitatorial power of the most comprehensive character," one that is
"in its nature, summary and exclusive." *Wiley v. Allegany County School Comm'rs,* 51 Md. 401,
405-06 (1879). The State Board possesses legislative powers that include the following: (a)
determine the elementary and secondary educational policies of the State (Md. Code Ann., Educ.
§ 2-205(b)(1)); (b) adopt bylaws, rules, and regulations for the administration of the public schools,
which have the force of law when adopted and published (Md. Code Ann., Educ. § 2-205(c)(1-2));
(c) establish basic policy and guidelines for the program of instruction for the public schools (Md.
Code Ann., Educ. § 2-205(h)(1)); and (d) establish rules and regulations for the promotion of

22

students in a public school and graduation from a public high school. Accordingly, as Maryland courts have made clear over the last one hundred and fifty years, the State Board has "the *last word on any matter concerning educational policy* or the administration of the system of public education." *Wilson v. Bd. of Ed.*, 234 Md. 561, 565 (1964). Consequently, it is "well established [in Maryland] that the State [Board] has preempted the field of education." *McCarthy v. Board of Education of Anne Arundel County*, 280 Md. 634, 651 (1977).

The State Board of Education is also the administrative agency that adopted revisions to COMAR 13A.01.06 and COMAR 13A.04.18.01 in 2019[1] to ensure the successful "administration of the public schools." Ed. Art. §2-205(c)(1); and approved the establishment of high school graduation requirement of one credit in Health Education. COMAR 13A.03.02.03(c)(5). Accordingly, a decision by the State Board of Education on the Plaintiff's legal controversy, particularly in its area of special expertise, would provide the technical knowledge required to address the Plaintiff's legal claims about MCPS' implementation of COMAR 13A.01.06 and COMAR 13A.04.18.01.

Rather than seeking premature redress in the courts, as Plaintiff has done here, parties are required to exhaust administrative remedies before the State Board in disputes involving the meaning of and application of such publicschool law provisions as COMAR 13A.01.06 and COMAR 13A.04.18.01. As the Plaintiff acknowledges at Paragraph 56 of his Complaint, similarly situated parents of a senior at Damascus High School pursued their administrative remedies before the State Board during the 2023-2024 school year, and the State Board applied its expertise to nearly identical allegations as those raised by the Plaintiff herein, and rejected them. The key issues in that case were: (1) COMAR 13A.04.18.01(D)(2), which mandates that FLHS instruction include discussions on "sexual orientation, gender identity, and gender expression," (*See Paragraph 82 of*

*Complaint*); and (2) the MCBOE's alleged authority to waive the one-credit Health Education graduation requirement, which was implemented by the State Board under Maryland law (*See Paragraphs 1 and 3, Requests for Relief*).

Plaintiff alleges that MCPS waited until September 10, 2024, to deny his request for a "religious exemption from the Health course" required for graduation.  Maryland law provides that appeals of decisions made by school superintendents must be filed in writing to the county board of education within thirty days of the decision (Md. Code Ann., Educ. §4-205(c)(3)), and may then be appealed to the State Board, within thirty days of the county board's decision. And the Plaintiff acknowledges that by October 22, 2024, his right to appeal had expired, as the Education Article § 4-205 deadline had passed. Having failed to file a timely appeal, Plaintiff never sought review by the State Board, thereby failing to exhaust administrative remedies that existed. *Robinson v. Bd. of Ed. of St. Mary's Cnty.,* 143 F. Supp. 481, 491 (D. Md. 1956).

The Complaint also states that from September 2022, when the Plaintiff was told in no uncertain terms that his son had to complete the Health Education requirement**,** until the filing of his Complaint, the Plaintiff chose not to pursue the available administrative remedy by seeking a declaratory ruling from the State Board regarding his exemption request. *See* COMAR 13A.01.05.02(D) (any aggrieved party in a "existing case or controversy" with a local school board may at any time "file a petition for declaratory ruling by the State Board on the interpretation of a public school law or regulation of the State Board that is material to [that] existing case or controversy."). Had the Plaintiff pursued this remedy, the State Board would have been compelled to respond, as his complaint involves the interpretation of a public education law or State Board regulation material to a live controversy or dispute. *See Bd. of Educ. for Dorchester Cty. v. Hubbard*, 305 Md. 774, 788–90 (1986) (citing *Bd. of Educ. of Garrett Cty. v. Lendo*, 295 Md. 55,

24

65–66 (1982)) (when a case requires an explanation of the 'true intent and meaning' of a provision of the Education Article or a State Board bylaw, a litigant has the choice of either going first to the county superintendent under [ED] § 4–205 and then on up the appellate ladder, or going directly to the State Board under [ED] § 2–205" and that "the State Board is required to hear appeals taken under either section 2–205 or 4–205.").

Here, the Complaint demonstrates that Plaintiff was fully aware of graduation requirements, repeatedly informed of administrative recourse, and knowingly failed to act. His current request for judicial intervention is both procedurally deficient and unsupported by Maryland law.

Each and every count in the complaint is based on allegations that go well beyond a tangential or incidental relationship with "matters which the administrative agency was legislatively created to solve." *Prince George's Cnty. v. Blumberg*, 288 Md. 275, 285 (1980). Quite clearly, resolution of each of the counts is dependent, in a "meaningful way," and, in fact, "call for or involve applications of [the State Board's] expertise." *Id.* at 285.

For the above reasons, Defendants request this Court apply the doctrine of primary jurisdiction and dismiss Plaintiff's Complaint for injunctive relief because Maryland law assigns primary jurisdiction of disputes regarding the three contested COMAR requirements in his Complaint to the State Board and Plaintiff failed to properly exhaust his administrative remedies. Defendants request that the Court exercise its discretion to retain jurisdiction of the Plaintiff's section 1983 and dismiss them on the merits for the reasons set forth in this Memorandum.

**F. The Parents of Another Damascus High School Senior Have Litigated the Same Claims Before the State Board of Education and the Montgomery County Circuit Court and Lost.**

In 2024, parents of another Damascus High School student filed an appeal of the

MCBOE's denial of their request for an exemption for their daughter from this same class, and asked the State Board to excuse her mandatory participation in completing the MCPS Health A and B Classes, a class at Montgomery County Community College, or an independent study to meet her graduation requirements because MCBOE's conduct allegedly violated COMAR 13A.03.02.03 and COMAR 13A.04.18.01D, and the constitutional rights of parental autonomy, freedom of speech, and freedom of religion. *See T.J*, Op. No. 24-10, Ex. 2.

On April 30, 2024, the State Board issued a comprehensive analysis of the appellant's claims and denied each one. First, the State Board determined that the MCBOE regulation IGP-RA, *Comprehensive Health Instructional Program*, was consistent with State Board regulations. Second, the State Board ruled that the parents' exemption request could not  be granted because: (a) it "is not permitted under COMAR 13A.03.02.03, COMAR 13A.04.18.01D, and local board regulation IGP-RA," and  (b) it "would violate State statutory and regulatory law and the [L]ocal [B]oard's regulations requiring the one credit of health education credit to graduate." Third,  State Board determined that the parents' request for MCBOE to confine any mention of LGBTQ resources to the FLHS unit of the health curriculum lacked merit because: (a) "Maryland's comprehensive health education regulations require education surrounding mental and emotional health, substance abuse prevention, and safety and violence prevention . . . and [t]he incorporation of LGBTQ+ resources would assist in that curriculum's primary objective to help students adopt and maintain behaviors that protect and promote health and avoid or reduce health risk;"  and (b) MCBOE's inclusion approach fulfills its "fundamental responsibility to include instructional materials that reflect the diversity of the local and global community," and fosters "a safe, supportive, and inclusive environment that benefits all students, consistent with Maryland's equity in education regulation and the [L]ocal [B]oard policies implementing these requirements."

26

The family then sought judicial review of the State Board Opinion. In *Timothy and Dagmar Janss, Individually and as parents and next friends of their minor child, G.J. vs. Montgomery County Board of Education*, Case No. C-15-CV-24-002588 (December 23, 2024), the Montgomery County Circuit Court addresses the same COMAR argument raised by this Plaintiff in his May 14th complaint and his motion for a temporary restraining order. In the Circuit Court's denial of the Janss' petition for judicial review of MSBE Op. No. 24-10 (2024), it ruled that MCBOE's decision to include "reference to the diverse LGBTQ+ community, into instructional materials (consistent with the educational equity requirement for each local school board to use materials that are inclusive) is not the same as the LGBTQ+ related direct teaching and instruction that occurs within the [family life and human sexuality] unit of the class." *See* Ex. 4. The Court further concluded, in opposition to Plaintiff's central argument in his Complaint and Motion, that "mere reference to, for example, same sex partners in the context of instructing or direct teaching on health-related subject matter in the health class, is not 'instruction' on family life or human sexuality, nor is such reference the promotion of an 'objective.'" *Id.*, p. 6. Thus, the Court concluded that the premise of Plaintiff's that reference to "alternative lifestyles such as LGBT[Q+] is instruction relating to FLHS objectives" is simply wrong, both intellectually and legally."

Accordingly, the Plaintiff has failed to state a claim because he cannot show that MCBOE's implementation of the Health A and Health B courses at Damascus High School violated the three contested COMAR requirements for graduation requirements, equity in public schools and health education.

### G. The Complaint Fails to State a Claim Upon Which Relief Can Be Granted Related to Violations of MCPS Regulation IGP-RA, or the Guidelines for Religious Diversity (Counts I-III).

Plaintiff contends that Defendants violated MCPS's Guidelines for Respecting Religious

Diversity and MCPS Regulation IGP-RA by refusing to allow his child to opt out of LGBTQ+ instruction, arguing that this refusal imposes a substantial burden on his religious beliefs. However, the guidelines referenced by Plaintiff are internal guidelines, not legally binding statutes or regulations, and do not create a private cause of action. Moreover, to the extent Plaintiff intends to claim negligence, violations of internal policies do not establish negligence. *Doe v. Prudential Ins. Co. of Am.*, 860 F. Supp. 243, 252-53 (1993)("The Maryland Court of Appeals has 'long held that the custom and practice of a party as distinguished from general custom and practice is inadmissible (as to the issue of negligence) since it is not helpful in the determination of what constitutes reasonable care).

Even if the Plaintiff could prove the Defendants violated an earlier version of the Guidelines by including LGBTQ+ materials or resources in health education units other than the FLHS unit, he cannot show that the two alternative options his son was offered for meeting the State of Maryland graduation requirement impose a substantial burden on his religious beliefs.

### H. Maryland Declaration of Rights Claims are Derivative of the Federal Counterparts and Must be Dismissed (Counts V, VIII, X, XII).

"Article 24 is the State's constitutional guarantee of due process and equal protection of the law." *Taylor v. Go-Getters, Inc*, No. 20-cv-3624-ELH, 2021 WL 5840956, at *16 (D. Md. Dec. 9, 2021) (citing *Town of Easton v. Pub. Serv. Comm'n of Md.*, 379 Md. 21, 41 n.11 (2003)). It is well settled that Article 24 is interpreted *in pari materia* with the Fourteenth Amendment. *Hawkins v. Leggett*, 955 F.Supp.2d 474, 496 (D.Md. 2013), *aff'd sub nom. In re Canarte*, 558 F.App'x 327 (4th Cir. 2014) (quoting *Rosa v. Bd. of Educ. of Charles Cnty., Md.*, No. 8:11-cv-02873-AW, 2012 WL 3715331, at *6 (D.Md. Aug. 27, 2012) (noting that "Article 24 of the Maryland Declaration of Rights is the state law equivalent of the Fourteenth Amendment" and "[t]herefore, the analysis under Article 24 is, for all intents and purposes, duplicative of the

analysis under the Fourteenth Amendment[]”); *Littleton v. Swonger*, 502 F.App'x 271, 274 (4th Cir. 2012) (noting that Article 24 is construed *in pari materia* with the Fourteenth Amendment)). As such, for reasons stated above in Section IV(D)(iv), Count V should be dismissed with prejudice

“Article 36 [of the Maryland Declaration of Rights] and the First Amendment of the United States Constitution have the same effect”; therefore, Maryland courts “analyze Article 36 and the First Amendment . . . under the same requirements.” *Booth v. Maryland*, 337 Fed. App'x 301, 311 (4th Cir. 2009) (citing *Stover v. Prince George's Cnty.*, 132 Md. App. 373 (2000); *Supermarkets Gen. Corp v. Maryland*, 286 Md. 611 (1979)). As such, for reasons stated above in Sections IV(D)(ii) & (iii), Counts VIII, X, XII should be dismissed with prejudice.

## I. Individuals Defendants Taylor, Rohner, and Allen are Entitled to Qualified Immunity on Federal Claims.

The Individual Defendants are immune from suit in regard to Counts IV, VI, VII, IX, and XI because their alleged conduct did not “‘violate clearly established statutory or constitutional rights,’” *Cole v. Buchanan Cnty. Sch. Bd.*, 328 F.App'x 204, 208 (4th Cir. 2009). It was not manifestly clear in 2024 or 2025 that MCPS was precluded from incorporating LGBTQ resources in each of the six units of the Health A and B course, or from denying the Plaintiff's request for his son to be exempted from the state-mandated health education graduation requirement.

Qualified immunity provides immunity from suit to government officials sued in their individual capacities “insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would know.” *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The U.S. Supreme Court “has repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation.” *Moxley v. The Town of Walkersville*, 601 F. Supp. 2d 648, 665 (D. Md. 2009).

A qualified immunity analysis involves two questions:  "(1) whether the facts alleged, "[t]aken in the light most favorable to the party asserting the injury, . . . show the [defendant's] conduct violated a constitutional right," *Saucier v. Katz,*  533 U.S. 194, 201 (2001)*;* and (2) the right that an official is alleged to have violated must be "clearly established," meaning that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  The "clearly established" prong of the qualified immunity analysis turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Wilson v. Layne*, 526 U.S. 603, 614 (1999).  And, "when statutory law expressly authorizes the government actor's conduct, qualified immunity is generally appropriate." *Dehn Motor Sales, LLC v. Schultz*, 96 A.3d 221, 240 (Md. 2014), citing *Pierson v. Ray,* 386 U.S. 547, 555 (1967). For the reasons stated *supra,* the Plaintiff's Constitutional rights were not violated when their requested exemption was denied.

Regarding the second prong, the Defendants' conduct did not violate clearly established constitutional or statutory rights. As stated above in Section (IV)(B), *supra,* there are no allegations specifically naming Defendant Taylor or identifying his alleged unconstitutional conduct. Defendant Allen corresponded with Plaintiff to inform him of the health requirement, suggest alternatives, and advise him of his right to appeal on October 22, 2024. Compl. ¶ 42 and Ex. 1. Defendant Rohner, as the principal of DHS, corresponded with Plaintiff regarding the failure to meet the health requirement on multiple occasions in the fall of 2024. *Id.* ¶ 41, 45-48. None of these actions indicate that the Defendants violated a clearly established right.  Defendants were merely complying with the state mandate that all students must complete one credit of health education to graduate, and that opt-outs from the entire health curriculum were not permitted.

Moreover, Defendants properly relied on the *Mahmoud* decision. Discussed at length *supra*, it was reasonable for the Defendants to believe that they were acting lawfully when they advised Plaintiff that he could not opt-out of the entire health curriculum when the District Court for the District of Maryland and the Fourth Circuit agreed with Defendant BOE's actions precluding an opt-out in a prior similar case.

In addition, the courts have not held that a Plaintiff has a First Amendment Right to opt out of curricular materials that offend an individual's religious beliefs. Other Federal Circuits have uniformly rejected claims that parents' religious freedoms were burdened by ideas or messages included in public school curricula. *Parker* v. *Hurley*, 514 F.3d 87, 107 (1st Cir. 2008); *Bauchman* v. *West High Sch.*, 132 F.3d 542, 556–558 (10th Cir. 1997); *Fleischfresser* v. *Directors of Sch. Dist. 200*, 15 F.3d 680, 689–690 (7th Cir. 1994); *Mozert* v. *Hawkins Cnty. Bd. of Educ.*, 827 F.2d 1058, 1065 (6th Cir. 1987); *Grove* v. *Mead Sch. Dist. No. 354*, 753 F.2d 1528, 1533–1534 (9th Cir. 1985).

The *Parker* decision is particularly illustrative regarding whether the Defendants' conduct from 2023 to 2025 violated a "clearly established" right. There, the parents, whose religious beliefs were offended by homosexuality, brought free-exercise and due-process claims "assert[ing] that they must be given prior notice by the school and the opportunity to exempt their young children from exposure to books they find religiously repugnant." 514 F.3d at 90.  The First Circuit found that the parents "ha[d] not described a constitutional burden on their rights" because the parents did "not allege coercion in the form of a direct interference with their religious beliefs, nor of compulsion in the form of punishment for their beliefs." *Id.* at 99, 105. And the First Circuit held that the parents' free-exercise rights were not burdened because "the mere fact that a child is exposed on occasion in public school to a concept offensive to a parent's religious

belief does not inhibit the parent from instructing the child differently." *Id.* at 105. Similarly, in *Mozert*, the Sixth Circuit rejected the parents' claim for exemption from reading a book "that involved mental telepathy" because "mere exposure to materials that offend one's religious beliefs" does not place "an unconstitutional burden on the free exercise of religion." 827 F.2d at 1060, 1067.  And, in *Fleischfresser*, the Seventh Circuit concluded that reading materials that feature "supernatural beings" did not "compel the parents or children to do or refrain from doing anything of a religious nature." 15 F.3d at 683, 689-690.

Further, reliance on the State Board Opinions were reasonable. The unique and sweeping authority of the State Board over the administration of the public education system in Maryland, was discussed at length in B*altimore City Board of Commissioners v. City Neighbors Charter School*, *supra,* where the Supreme Court summarized the long line of cases that establish the "very broad statutory authority" of the State Board of Education "over the administration of the public school system in this State." 400 Md. 324, 342 (2007).  The Court explained **that the totality of the State Board's statutory authority constitutes "a visitatorial power of such comprehensive character as to invest the State Board 'with the last word on any matter concerning educational policy or the administration of the system of public education'**." (Emphasis added) *Id*., 400 Md. at 342-343. In addition, in *Hurl v. Board of Educ. of Howard County*, *supra,* 107 Md.App. 302,  the Court of Appeals determined that even if a rule issued by the State Board is "perhaps not found in the education regulations of COMAR, or in published State Board of Education bylaws, **the rule in [a published Board decision] nonetheless has precedential and binding effect by virtue of the fact that it was adopted as such in an adjudicatory decision and was published."** (*emphasis added*) *Id.,* p.300.  Accordingly, the Defendants properly relied on the State Board's "last word" on its implementation of COMAR

and the inclusion of LGBTQ resources in all units of the Health A and B courses in Opinion No. 24-10 (2024) issued in the spring of 2024, when they denied a nearly identical Plaintiff's repeated requests in 2024 and 2025 for his son to be exempted from the entire one credit health education graduation requirement.

V.    **CONCLUSION**

**WHEREFORE**, the foregoing considered, Defendants, Board of Education for Montgomery County (BOE), improperly identified in the Complaint as "Montgomery County Board of Education", Montgomery County Public Schools (MCPS), Thomas W. Taylor, Bradley Rohner, and Yolanda Allen, respectfully request that this Honorable Court grant this Motion to Dismiss and dismiss this action with prejudice.

Respectfully submitted,

JOHN P. MARKOVS
COUNTY ATTORNEY

_____/s/_____
Patricia Lisehora Kane, Chief
Litigation Division
Federal Bar No. 13621
patricia.kane@montgomerycountymd.gov

_____/s/_____
Jacquelyn P. Allen
Assistant County Attorney
Federal Bar No. 20594
jacquelyn.allen@montgomerycountymd.gov
101 Monroe Street, Third Floor
Rockville, Maryland 20850
(240) 777-6700

_____/s/_____
Craig Meuser,
Legal Director, Litigation and Employment
Federal Bar No. 30522
Office of the General Counsel
Montgomery County Public Schools

33

15 W. Gude Drive, Suite 400
Rockville, MD 20850
Craig_S_Meuser@mcpsmd.org
240-740-5600

**_Counsel for Defendants, Board of
Education, MCPS, Taylor, Rohner, and
Allen_**