IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SETH GOTTESMAN | : | |
| | : | |
|     **Plaintiff,** | : | |
| | : | |
| v. | : | Case No. 8:25-cv-01682-DKC |
| | : | |
| MONTGOMERY COUNTY BOARD OF EDUCATION, *et al.* | : | |
| | : | |
|     **Defendants.** | : | |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION
TO MOTION TO DISMISS COMPLAINT**

COME NOW Defendants, Board of Education for Montgomery County (BOE), Montgomery County Public Schools (MCPS), Thomas W. Taylor, Bradley Rohner, and Yolanda Allen, by and through undersigned attorneys, and file this Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint. Plaintiff has failed to successfully rebut the legal arguments set forth in the Motion to Dismiss and thus, Defendants are entitled to dismissal with prejudice of all claims against them.

**I.   Plaintiff's Free Exercise Claims Must Be Dismissed, and Dismissal Is Not Foreclosed by *Mahmoud* (Counts VII, IX, XI)**

Plaintiff's reliance on *Mahmoud v. Taylor*, 145 S. Ct. 2332, 2350 (2025), is completely misplaced and lends no support to his position given that it is factually and legally distinguishable from the matter at hand. As explained below, Plaintiff has failed to plausibly allege any substantial constitutional burden on his religious exercise. Moreover, the alternatives provided by BOE defeat any claim of direct or indirect compulsion, coercion, or substantial interference with the religious development of the child. Accordingly, Plaintiff has not demonstrated that his constitutional rights were burdened and there is no need for the Court to apply strict scrutiny to the Defendants' conduct.

1

A. *Plaintiff's Attempt to Equate This Case with Mahmoud Fails.*

First, Plaintiff contends that the Supreme Court's recent decision in *Mahmoud v. Taylor*, 145 S. Ct. 2332 (2025), is directly applicable to this case, arguing that BOE's inclusion of LGBTQ+ materials outside the Family Life and Human Sexuality ("FLHS") unit mirrors the conduct condemned in *Mahmoud*. This argument misrepresents both the scope of *Mahmoud* and the factual distinctions between that case and the matter before this Court.

The preliminary injunction at issue in *Mahmoud* arose from the BOE's failure to provide any opt-out option *at all* from instruction on "LGBTQ+-inclusive" texts to *elementary school* aged children. Specifically, the BOE initially indicated that it would notify parents when the "LGBTQ+-inclusive" storybooks would be taught and permit children to be excused from the instruction. The Supreme Court noted that this compromise was consistent with the BOE's "Guidelines for Respecting Religious Diversity," which professed a commitment to making "reasonable accommodations" for the religious "beliefs and practices" of students. *Id*. at 2346. However, the BOE then rescinded the parental opt-out policy. *Id*. The preliminary injunction filed in *Mahmoud* sought relief from this total rescission of opt-outs. *Id.* at 2349. The petitioners in that case asserted that the BOE's no-opt-out policy infringed their right to the free exercise of their religion. *Id.*

The Supreme Court held, "we have long recognized the rights of parents to direct 'the religious upbringing' of their children." *Espinoza v. Montana Dept. of Revenue*, 591 U.S. 464, 486 (2020) (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 213–214 (1972)(the Supreme Court has held that "those rights are violated by government policies that 'substantially interfer[e] with the religious development' of children."). The Supreme Court in *Mahmoud* emphasized that young children are uniquely impressionable, and that burdens on their religious development may be more acute. It stated that "[h]igh school students may understand that widespread approval of a practice does not necessarily mean that everyone should accept it," while "very young children are

most unlikely to appreciate that fine point." *Mahmoud*, 145 S. Ct. at 2353. The Supreme Court continued "[e]ducational requirements targeted toward very young children, for example, may be analyzed differently from educational requirements for high school students." *Id*. The Supreme Court held that the parents in *Mahmoud* were likely to succeed on their claim that the BOE's *total* recission of an opt-out, i.e*., no accommodation at all*, unconstitutionally burdened their religious exercise.

In contrast to *Mahmoud,* where elementary school students were to be exposed to LGBTQ+-themed storybooks *without any opt-out mechanism or alternative educational pathway*, here, it is undisputed that Plaintiff's child, a high school senior, was presented with *several possible accommodations*, including an opt-out and alternative educational pathways. As outlined in Defendants' original memorandum, MCPS students may: (a) opt out of the FLHS unit of the health curriculum and complete the remaining five sections; (b) attend an in-person or online class at Montgomery County Community College; (c) pursue an independent study through MCPS; or (d) complete the full health curriculum, including FLHS, at MCPS. Plaintiff was not forced to choose between obtaining a diploma and exercising his religious beliefs as he had several alternatives from which to choose. Moreover, Plaintiff's high school senior falls squarely within the category of students the Supreme Court deemed less susceptible to religious interference from curricular materials.

Thus, a critical difference between the instant matter and *Mahmoud* is that here, Plaintiff's high school student was provided *multiple constitutionally sufficient alternatives* to satisfy the State's health education requirement. *See* Def. Motion to Dismiss, Ex. 1, ECF No. 23-4. Accordingly, the reasoning and decision in *Mahmoud* simply *do not apply* to the relief sought by Plaintiff.

> B. *Plaintiff's Free Exercise Claims Fail Because BOE Provided Reasonable Alternatives and No Substantial Burden Has Been Alleged.*

Not only is the instant matter factually distinguishable from *Mahmoud*, but Plaintiff has failed to satisfy his burden of proof that his religious exercise was substantially burdened, given that Plaintiff had the option to pursue alternative paths of their choosing. For example, Plaintiff has not plausibly alleged in his Complaint that the two alternatives offered – completion of a health course at the community college or through independent study – imposed any burden on his religious exercise. Indeed, Plaintiff's high schooler, under the supervision of BOE staff, had the alternative option of pursuing an independent study *of his choosing*. The Complaint contains no factual allegations that either alternative included constitutionally objectionable content, violated his religious beliefs, or was prohibitively expensive.

Moreover, as shown in Exhibits C and E to Defendants' Opposition to Plaintiff's Motion for Injunction (ECF Nos. 8-5, ¶8; 8-7), Plaintiff explicitly informed Principal Yates that he would not pursue the community college option because he wanted MCPS to educate his son, not because of any religious objection. At no point did the Plaintiff inform the Defendants that taking a class at the community college or pursuing an independent study would violate his Free Exercise rights or impose a financial hardship. This absence of direct or indirect coercion or compulsion is fatal to his Free Exercise claim. *See Mahmoud,* 145 S. Ct. at 2362 (holding that coercion arises where parents are forced to choose between exposing their child to objectionable instruction or incurring substantial burdens to avoid it).

Plaintiff's bare assertion that MCPS "dispersed" FLHS materials throughout the health curriculum to avoid opt-out protections is speculative and, critically, not supported by any factual allegations. *See* Pl. Opp., ECF No. 31, p. 4. Mere speculation and conclusory statements will not defeat a motion to dismiss. The inclusion of LGBTQ+ materials in units addressing mental health,

4

safety and relationships is consistent with Maryland's educational equity standards and does not constitute a violation of COMAR or IGP-RA. The Maryland State Board of Education has already addressed this issue in *T.J. and D.J. v. Montgomery County Board of Education*, MSBE Op. No. 24-10 (2024)(ECF No. 3-1)*,* and concluded that such inclusion is lawful and pedagogically appropriate.

### C. Strict Scrutiny Cannot Be Applied Absent a Substantial Burden.

Plaintiff improperly urges the Court to apply strict scrutiny to the BOE's policy. *See* Pl. Opp., ECF No. 31, p. 4. However, strict scrutiny is only applied if Plaintiff has first demonstrated a substantial burden on religious exercise. For reasons set forth above, Plaintiff has not set forth factual allegations to satisfy his burden, and thus, strict scrutiny should not be applied to BOE's policy.

Further, even if the Court did examine the policy under strict scrutiny, BOE's policy is neutral and generally applicable. Plaintiff invokes *Lukumi*, *Fulton*, and *Tandon* to argue that BOE's policies are not neutral or generally applicable. However, the cited cases involved government actions that selectively burdened religious conduct while permitting secular exceptions. *See Church of Lukumi Babula Aye v. City of Hialeah*, 508 U.S. 520 (1993); *Fulton v. City of Philadelphia*, 593 U.S. 522 (2021); *Tandon v. Newsom*, 593 U.S. 61 (2021). BOE's health curriculum and corresponding opt-out and alternatives apply uniformly to all students and do *not* target religious beliefs. The opt-out policy for the FLHS unit and the community college and independent study alternatives are available to *all* students for *any* reason. The inclusion of LGBTQ+ materials in other units does not create a system of selective carve-outs and Plaintiff has not plausibly pled any animus toward his religion.

Further, the policy is narrowly tailored to serve a compelling state interest in educational equity and uninterrupted instruction. *See Grayned v. City of Rockford*, 408 U.S. 104, 119

5

(1972); *Mahmoud*, 145 S. Ct. at 2361-2. When analyzing whether the BOE's policy regarding the use of the storybooks in *Mahmoud* could survive strict scrutiny, the Supreme Court stated:

> We acknowledge that courts are not school boards or legislatures, and are ill-equipped to determine the necessity of discrete aspects of a State's program of compulsory education. It must be emphasized that what the parents seek here is not the right to micromanage the public school curriculum, but rather *to have their children opt out* of a particular educational requirement that burdens their well-established right to direct the religious upbringing of their children. We express no view on the educational value of the Board's proposed curriculum, other than to state that it places an unconstitutional burden on the parents' religious exercise if it is imposed *with no opportunity for opt outs*. Providing such an opportunity would give the parents no substantive control over the curriculum itself.

*Mahmoud,* 145 S. Ct. at 2363.

Here again, opt-outs and alternative pathways for education were provided and thus, even applying strict scrutiny, it is clear that the BOE's policy passes muster. In sum, *Mahmoud* does not foreclose dismissal of Plaintiff's Free Exercise claims. The Complaint fails to allege a plausible constitutional burden, and the free exercise claims must be dismissed.

## II.     Plaintiff's Substantive Due Process Claim Is Legally Deficient and Must Be Dismissed (Count IV)

Plaintiff's argument that his parental-rights allegations state a substantive due process claim misstates the scope of the constitutional right. While the Supreme Court has recognized a fundamental right of parents to direct the upbringing and education of their children, that right does *not* extend to controlling the content of public school curriculum or requiring public schools to tailor instruction to individual religious preferences. In *Mahmoud,* the Court recognized that the parents did not have the right to substantially control the curriculum, rather, they must be given the opportunity to opt-out of content that burdens their right to direct the religious upbringing of their child. *Mahmoud*, 145 S.Ct. at 2363.

The cases Plaintiff cites, *Meyer v. Nebraska*, *Pierce v. Soc'y of Sisters*, and *Troxel v. Granville*[1], stand for the general proposition that parents have a right to make decisions about their children's education and care. However, none of those cases even remotely involved challenges to specific classes in a public school curriculum mandated by State law as a diploma requirement. Courts have consistently held that when parents choose to send their children to public school, the government has broad authority to determine curriculum content, subject only to rational basis review.[2] *See Mahmoud v. McKnight*, 688 F. Supp. 3d 265, 306 (D. Md. 2023), *aff'd*, 102 F.4th 191 (4th Cir. 2024); *Parker v. Hurley*, 514 F.3d 87, 102–03 (1st Cir. 2008).

Plaintiff's claim that MCPS "moved FLHS content outside the FLHS unit" and "blocked inspection of materials" does not transform this into a substantive due process violation. *See* Pl. Opp., ECF No. 31, p. 4. The alleged conduct does not interfere with the religious upbringing of Plaintiff's son as he was able to opt out of the course if he was concerned that the content would be objectionable, and was offered alternatives to complete the graduation requirement of one credit of health education. Plaintiff has not alleged that any of these alternatives burden his parental rights. The availability of these options further undermines any claim of coercion or substantial interference with the child's religious development.

In short, Plaintiff's substantive due process claim fails because the curriculum decisions at issue are subject to rational basis review, and BOE's policies satisfy that standard.

---

[1] *Meyer v. Nebraska,* 262 U.S. 390 (1923), *Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925); *Troxel v. Granville,* 530 U.S. 57 (2000).
[2] In *Mahmoud,* the Supreme Court clarified that strict scrutiny is the proper inquiry only if the Plaintiff can show that the Defendants' implementation of its policy and regulations substantially interfered with Plaintiff's right to the free exercise of religion. 145 S. Ct. at 2360. Since the Defendants did not violate Plaintiff's constitutional rights, strict scrutiny is not required.

**III.    PPRA Does Not Create a Private Right of Action (Count VI)**

Plaintiff's argument that the Protection of Pupil Rights Amendment (PPRA), 20 U.S.C. § 1232h, should not be dismissed with prejudice is unsupported by controlling law and mischaracterizes the statute's enforceability.

It is well established that PPRA does *not* create a private right of action. Courts across jurisdictions, including within the Fourth Circuit, have consistently held that PPRA is not enforceable by individual plaintiffs either directly or via 42 U.S.C. § 1983 *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 288–290 (2002) (no private right of action exists under FERPA); *Hodge v. Coll. of S. Md.,* 121 F. Supp. 3d 486, 496 (D. Md. 2015) ("FERPA [] does not provide a private right of action"); *Ashby v. Isle of Wight Cnty. Sch. Bd.,* 354 F. Supp. 2d 616, 623 n.9 (E.D. Va. 2004) (FERPA and PPRA "do not create private causes of action").

Plaintiff's reliance on *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159 (3d Cir. 2005), is unavailing. That case involved a unique factual context, student surveys funded by federal grants, and the Third Circuit ultimately concluded that PPRA did not create enforceable rights under § 1983. Moreover, Plaintiff's Complaint does not allege any facts that would bring this case within the limited contexts where PPRA might arguably apply, such as federally-funded surveys or psychological testing. The allegations concern curriculum content and opt-out procedures, which fall outside the scope of PPRA's protections.

Further, Plaintiff concedes that his federal claims are "independently grounded" in the Free Exercise and Due Process Clauses. *See* Pl. Opp., ECF No. 31, p. 8. Accordingly, the PPRA count is not essential to his case and should be dismissed with prejudice to avoid unnecessary litigation over a legally deficient claim. Treating PPRA allegations as merely "contextual" does not cure the absence of a valid cause of action*. Id.* at p. 8.

IV. **Plaintiff's State Constitutional Claims Fail for the Same Reasons as His Federal Claims (Counts V, VIII, X, XII)**

Plaintiff argues that the Maryland Declaration of Rights provides broader protection of parental rights than the U.S. Constitution, citing custody and visitation cases such as *In re Yve S.*, *McDermott*, and *Koshko*[3]. But those cases concern third-party interference with parental custody, not disputes over public school curriculum. Defendants are not challenging the custody of Plaintiff's son.

Moreover, Maryland courts interpret Articles 24 and 36 in *pari materia* with the Fourteenth Amendment and First Amendment. *See Hawkins v. Leggett*, 955 F. Supp. 2d 474, 496 (D. Md. 2013); *Booth v. Maryland*, 337 Fed. App'x 301, 311 (4th Cir. 2009). Plaintiff's state constitutional claims are therefore not independently viable and must be dismissed along with his federal claims.

V. **Plaintiff's State-Law Claims Are Barred by Exhaustion**

Plaintiff correctly notes that federal claims under §1983 do not require exhaustion. *See Patsy v. Board of Regents*, 457 U.S. 496, 500–07 (1982). However, Plaintiff's argument overlooks the fact that the majority of his claims, including those seeking declaratory relief based on alleged violations of COMAR and MCBE Regulation IGP-RA, are grounded in Maryland state law, not federal constitutional provisions. *See* Complaint, ECF No. 2, Requests for Relief ¶¶ 5-12. These state-law claims are precisely the type that fall within the primary jurisdiction of the Maryland State Board of Education, which has exclusive authority to interpret and enforce public school law in Maryland. *See Md. Code Ann., Educ. § 2-205(e)*; *see also Bd. of Educ. for Dorchester Cty. v. Hubbard*, 305 Md. 774, 790–91 (1986). Here, Plaintiff failed to pursue available administrative remedies.

---

[3] *In re Yve S., 373 Md. 551* (2003), *McDermott v. Dougherty*, 385 Md. 320 (2005), and *Koshko v. Haining*, 398 Md. 404 (2007).

Further, the doctrine of primary jurisdiction does not deprive this Court of jurisdiction over federal claims. Rather, it supports dismissal or abstention with respect to state-law claims that require the expertise of an administrative agency. Courts routinely apply this doctrine to ensure that regulatory disputes are first addressed by the agency charged with administering the relevant statutory framework. *See Reiter v. Cooper*, 507 U.S. 258, 268–69 (1993); *Josephson v. City of Annapolis*, 353 Md. 667, 681 (1999).

### VI.     COMAR and IGP-RA Claims Are Procedurally Deficient

Plaintiff's assertion that the state-law claims under COMAR and MCBE Regulation IGP-RA are well pled and complementary to his constitutional claims does not cure the fundamental procedural and jurisdictional defects that require dismissal.

First, Plaintiff's claims under COMAR and IGP-RA are subject to the primary jurisdiction of the MSBE. As stated above, Maryland law is clear that the State Board has exclusive authority to interpret and enforce public school law, including COMAR provisions. *See Hubbard, supra.* The State Board's jurisdiction is not discretionary, it is mandatory where, as here, the claims involve the interpretation and application of state education regulations. Plaintiff's failure to exhaust these administrative remedies before filing suit is fatal to his state-law claims. *See* section V, above.

Second, Plaintiff's reliance on the *Accardi* doctrine is misplaced. *Accardi v. Shaughnessy*, 347 U.S. 260 (1954). That principle applies to procedural violations in adjudicatory settings. Plaintiff's claims here do not involve any such adjudicatory process. Rather, they challenge curriculum design and implementation, areas that fall squarely within the discretionary and policy-making authority of the Board of Education.

Moreover, Plaintiff's allegations that MCPS "spread" FLHS content throughout the health curriculum in violation of COMAR 13A.04.18.01(D)(2) are not supported by the regulation's text

or by any factual allegations showing that the inclusion of LGBTQ+ materials outside the FLHS unit constitutes a regulatory violation. The regulation requires that FLHS instruction include topics such as sexual orientation and gender identity, but it does not prohibit the inclusion of related materials in other health units addressing mental health, safety, or relationships. As stated above, the MSBE has already addressed this issue in *T.J.*, MSBE Op. No. 24-10 (ECF No. 3-1), and concluded that such inclusion is consistent with both COMAR and the Board's educational equity obligations.

Finally, Plaintiff's suggestion that the Court should defer ruling on the state-law claims and allow them to proceed alongside the constitutional claims ignores the fact that the state-law claims are not merely "complementary", they are dependent on the interpretation of COMAR provisions that the State Board has exclusive authority to construe. *See Hubbard*, *supra.* Allowing these claims to proceed in federal court would improperly bypass the administrative process and undermine the State Board's role.

## VII.     *Janss* Case Is Persuasive Authority

Plaintiff's attempt to dismiss the relevance of the *Janss* case is unpersuasive. *Timothy and Dagmar Janss v. MCBOE*, Case No. 15-cv-24-002588 (Circuit Court, Dec. 23, 2024)(ECF No. 8-6). The *Janss* litigation addressed the same core issues: whether MCPS's inclusion of LGBTQ+ materials throughout the health curriculum violated COMAR 13A.04.18.01(D)(2), whether parents had a constitutional or statutory right to opt out of the entire health course, and whether BOE's implementation of the curriculum infringed upon parental rights or religious freedoms. Both the MSBE and the Montgomery County Circuit Court rejected those claims after full briefing and oral argument, concluding that BOE's curriculum complied with state law and did not violate constitutional rights.

Plaintiff's suggestion that the administrative nature of the *Janss* proceedings renders them irrelevant ignores the well-established principle that courts may rely on agency decisions and related judicial reviews as persuasive authority, especially where the agency has specialized expertise in interpreting the relevant statutes and regulations. *See Hubbard*, *supra* (emphasizing the State Board's "paramount role" in interpreting public education law).

Moreover, the procedural differences between administrative review and civil litigation do not diminish the substantive legal conclusions reached in *Janss*. The State Board and Circuit Court applied the same legal standards that govern this Court's analysis under Rule 12(b)(6), including whether the plaintiffs stated a claim upon which relief could be granted. Their findings, particularly that mere exposure to LGBTQ+ materials does not constitute coercion or indoctrination, are directly relevant to the Free Exercise and Due Process claims asserted here.

In sum, while *Janss* may not bind this Court, it provides a well-reasoned and factually aligned roadmap for resolving the claims in this case.

### VIII.   MCPS Is Not a Legal Entity Capable of Being Sued

Plaintiff's argument that MCPS should remain a defendant because it acted in its own name when responding to his requests is legally unsupported. Under Maryland law, MCPS is not a separate legal entity capable of being sued. The Maryland Education Article § 3-104(b) expressly provides that the county board of education, not the school system or its administrative arm, is the entity authorized to sue and be sued. MCPS is simply the operational name for the school system administered by the Montgomery County Board of Education (MCBE), and it has no independent legal status.

Federal courts applying Maryland law have consistently dismissed claims against MCPS on this basis. In *Miller v. Montgomery County Public Schools*, No. TJS-19-3067, 2020 WL 2128644, at *3 (D. Md. May 1, 2020), the court dismissed claims against MCPS with prejudice,

holding that it is not a distinct legal entity. The same conclusion was reached in *James v. Frederick County Public Schools*, 441 F. Supp. 2d 755, 760 (D. Md. 2006), where the court emphasized that only the county board of education is a suable entity.

Plaintiff's reliance on *MCPS v. Donlon*, 460 Md. 62 (2018), is misplaced. That case did not address or decide the issue of whether MCPS is a suable entity. The court in *Donlon* did not analyze the legal status of MCPS, nor did it hold that MCPS could be sued independently of the Board.

That MCPS staff communicated with Plaintiff or responded to his requests does not confer legal status on MCPS. Those actions were taken on behalf of the Board, which is the governing body responsible for the operation of the school system. Naming MCPS as a separate defendant is both redundant and improper, particularly where the Board is already a party to the case. Accordingly, all claims against MCPS should be dismissed with prejudice.

### IX. Plaintiff's Group Pleading Fails to Satisfy Rule 8 and Does Not Provide Fair Notice

Plaintiff contends that the Complaint satisfies Fed. R. Civ. P. 8 by identifying specific conduct by individual defendants. This style of pleading is insufficient under well-established federal pleading standards. Here, Plaintiff's Complaint repeatedly refers to "Defendants" as a group when asserting constitutional violations, including in Counts IV, VI, VII, IX, and XI. This approach fails to identify which defendant engaged in which alleged unlawful act or which causes of action apply to each defendant, and thus deprives each individual defendant of fair notice.

As to Superintendent Taylor, Plaintiff fails to allege any personal involvement whatsoever. His name appears only in the caption and in conclusory references to "Defendants." This is precisely the type of pleading that courts have found insufficient. *See Felder v. Leggett*, No. CV ELH-16-3469, 2020 WL 132562, at *4 (D. Md. Jan. 13, 2020) (dismissing claims where plaintiff failed to allege personal involvement of supervisory officials).

Plaintiff argues that, if the Court finds the pleading insufficient, leave to amend should be granted. However, leave to amend is not warranted where the Complaint, as here, fails to allege a plausible claim even under the most liberal reading.

## X. Defendant BOE and its Employees Are Not a "Person" Subject to Suit for Purposes of § 1983

First, as courts in this District have consistently held, the Board of Education for Montgomery County is an arm of the State and therefore not a "person" subject to liability under 42 U.S.C. § 1983. *See Jabari-Kitwala v. Montgomery Cnty. Pub. Sch.*, No. CV GLS 22-0069, 2023 WL 4175359, at *8 (D. Md. June 23, 2023); *Mee v. Hubbard*, 2003 WL 22571715, at *3 (D. Md. Feb. 3, 2003); *Rosenfeld v. Montgomery County Pub. Schs.*, 41 F. Supp. 2d 581, 586 (D. Md. 1999); *Jones v. Frederick County Bd. of Educ.*, 689 F. Supp. 535, 537–38 (D. Md. 1988). The Maryland Court of Appeals has likewise confirmed that county school boards are instrumentalities of the State. *See Zimmer-Rubert v. Bd. of Educ. of Balt. Cnty.*, 409 Md. 200, 947 A.2d 135, 141 (2008).

The Supreme Court has held that State agencies, as well as State employees sued in their official capacities, are excluded from the definition of "person" under 42 U.S.C. § 1983, and, thus, cannot be sued under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). There is no waiver of the scope and exclusion of § 1983. This principle has been consistently applied in this District. See *Mee*, 2003 U.S. Dist. LEXIS 21805, at *3.

Importantly, the scope of § 1983 is separate from the Eleventh Amendment protection of a State being sued in federal court. Plaintiff's argument that Maryland's waiver of sovereign immunity under CJP § 5-518(c)[4], or the fact of removal to federal court, somehow permits §1983

---

[4] Maryland law provides a limited waiver of sovereign immunity for county boards of education under CJP § 5-518(c). Specifically, a county board may not raise the defense of sovereign immunity to any claim of $400,000 or less, except in cases involving sexual abuse, where the cap is increased to $890,000 per claimant. This waiver applies to tort claims

14

claims against the Board of Education demonstrates a clear misunderstanding of the law. Simply put, neither § 5-518(c) nor removal to federal court alters the statutory definition of "person" under §1983 or creates liability where none exists.[5] Accordingly, because the Board of Education is not a "person" under § 1983, all claims against it under that statute must be dismissed.

## XI. Qualified Immunity Bars Claims Against Individual Defendants

Plaintiff's argument that qualified immunity cannot be resolved at the pleading stage ignores binding precedent. The Supreme Court has repeatedly held that government officials are immune from suit unless their conduct violates **clearly-established law**. *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Anderson v. Creighton*, 483 U.S. 635 (1987).

As explained in Defendants' Motion to Dismiss (ECF No. 23-1) and Supplemental Submission (ECF No. 26), the individual defendants are entitled to qualified immunity because Plaintiff has not alleged a violation of clearly-established law. The Supreme Court's decision in *Mahmoud*, 145 S. Ct. at 2350, represents a new standard in Free Exercise jurisprudence. As Justice Sotomayor noted in dissent, the Court's ruling "creates a new standard for free exercise burdens" in public school settings. *Id.* at *47. Indeed, experienced jurists in both District Court (2023) and the Fourth Circuit (2024) concluded that pre-Supreme Court *Mahmoud* jurisprudence did not prohibit the BOE's actions regarding the inclusion of the LGBTQ+ storybooks in the curriculum even without availability of the opt-out.[6] Accordingly, the law was not clearly established at the time of the alleged conduct, and dismissal is appropriate.

---

and is intended to ensure that plaintiffs can recover damages up to the statutory limit when suing a county board or its employees acting within the scope of their duties.

[5] Plaintiff's reliance on *Lee-Thomas v. Prince George's Cty. Bd. of Educ.*, 666 F.3d 244 (4th Cir. 2012), is misplaced. That case addressed the procedural effect of Maryland's waiver in federal court, not the substantive question of whether a county board is a "person" under §1983. The Fourth Circuit did not hold that the waiver overrides *Will* or creates §1983 liability where none otherwise exists.

[6] *Mahmoud v. McKnight*, 688 F. Supp. 3d 265 (D. Md. 2023); *aff'd,* 102 F.4th 191 (191) (4th Cir. 2024).

## XII. CONCLUSION

**WHEREFORE**, the foregoing considered, Defendants respectfully request that this Honorable Court grant their Motion to Dismiss and dismiss this action with prejudice.

Respectfully submitted,

JOHN P. MARKOVS
COUNTY ATTORNEY

_____/s/_____
Jacquelyn P. Allen
Assistant County Attorney
Federal Bar No. 20594
jacquelyn.allen@montgomerycountymd.gov
101 Monroe Street, Third Floor
Rockville, Maryland 20850
(240) 777-6700

_____/s/_____
Craig Meuser,
Legal Director, Litigation and Employment
Federal Bar No. 30522
Office of the General Counsel
Montgomery County Public Schools
15 W. Gude Drive, Suite 400
Rockville, MD 20850
Craig_S_Meuser@mcpsmd.org
240-740-5600

***Counsel for Defendants, Board of Education, MCPS, Taylor, Rohner, and Allen***